160 N.J. Super. 81 (1978)
388 A.2d 1299
NEW JERSEY OPTOMETRIC ASSOCIATION, PLAINTIFF-APPELLANT,
v.
HILLMAN-KOHAN EYEGLASSES, INC. ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 7, 1978.
Decided June 7, 1978.
*83 Before Judges LYNCH, KOLE and PETRELLA.
Mr. Seymour Margulies argued the cause for appellant (Messrs. Brigadier & Margulies, attorneys; Messrs. Seymour and Robert E. Margulies on the brief; Mr. Max Spinrad, associate counsel).
Mr. Clive S. Cummis argued the cause for respondent Hillman-Kohan Eyeglasses, Inc. (Messrs. Sills, Beck, Cummis, Radin & Tischman, attorneys; Mr. Jerald D. Baranoff on the brief).
Mr. Jack Dashosh argued the cause for respondent Vornado, d/b/a Noble Optics, Inc. and Noble Eyeglasses.
Mr. Bruce R. Fadem argued the cause for respondents Abrams, Alonge, Angelini, Appel, Arons, Barth, Blaurock, Blumberg, Cogan, Epstein, Falkowitz, Feinstein, Feinstein, Glazer, Kaufman, Kurtz, Lehman, Levine, Morenstein, Oxenhorm, Schuster, Shapiro, Shapiro, Vend and Zolot (Messrs. Fadem & Liberman, attorneys).
Ms. Beatrice Levidow, Deputy Attorney General, argued the cause for respondent State Board of Optometrists and the Attorney General of New Jersey (Mr. John J. Degnan, Attorney General, attorney; Mr. William F. Hyland, former Attorney General, and Ms. Erminie L. Conley, Deputy Attorney General, of counsel).
Mr. Sanford Kluger, attorney for respondent Kaplan, submitted a brief.
*84 Ms. Inez M. Stanziale, attorney for respondent Weiss, relied on briefs filed by Messrs. Fadem & Liberman, attorneys for individual respondents.
Messrs. Heilbrunn, Finkelstein, Heilbrunn, Garruto & Galex, attorneys for respondents Plasner and Ruffo, relied on briefs filed by Messrs. Fadem & Liberman, attorneys for individual respondent.
Mr. Joseph Schoenholz, attorney for respondent Community Opticians $7 Eyeglasses, relied on brief filed by Messrs. Sills, Beck, Commis, Radin & Tischman, attorneys for respondent Hillman-Kohan.
Messrs. Schiffman & Schiffman, attorneys for respondent Schiffman, relied on brief filed by all other respondents.
The opinion of the court was delivered by LYNCH, P.J.A.D.
Plaintiff, a not-for-profit New Jersey corporation composed of over 500 licensed optometrists (hereafter, Association), brought suit in the Chancery Division alleging that three corporations and several individuals engaged in the optometry business (hereafter, the nonpublic defendants) violated the Optometry Act, N.J.S.A. 45:12-1 et seq., the Optician Act, N.J.S.A. 52:17B-41.1 et seq., and the New Jersey Antitrust Act, N.J.S.A. 56:9-1 et seq., and further charging unfair competition and conspiracy. Plaintiff also alleged that the New Jersey Board of Optometrists (hereafter, the board) and the Attorney General of New Jersey (sometimes jointly referred to as the public defendants) failed to perform their duties. The complaint sought to compel the public defendants to institute proceedings against the nonpublic defendants on the charges cited above.
*85 The trial judge, in an opinion reported at 144 N.J. Super. 411 (Ch. Div. 1976), accurately summarized the substance of the complaint. As to the nonpublic defendants, he noted:
The complaint is drafted in 13 counts. The basic thrust of the complaint as it relates to the individual defendants and corporate defendants is that they have entered into a commercial relationship which is in violation of N.J.S.A. 45:12-1 et seq. and N.J.A.C. 13:38-1 et seq. and the Association and its membership is injured thereby. More specifically, the Association charges that this relationship and the activities pursuant thereto violate N.J.S.A. 45:12-11, 19, 19.1. It is contended that these alleged illegal acts constitute a fraud on the public, denigrate the professional standards of the practice of optometry in New Jersey, are tortious as against the Association and its membership, cause unjust enrichment and also violate the New Jersey Antitrust Act, N.J.S.A. 56:9-1 et seq. [at 415; footnotes omitted]
And as to the public defendants:
Count five of the complaint alleges that the Board has arbitrarily rejected numerous requests of the Association for the Board to take the necessary and proper steps provided by statute to halt the illegal and improper activities of the individual and corporate defendants. The Association wants the court to direct the Board to institute proceedings on the Association's complaints pursuant to N.J.S.A. 45:12-12.
The sixth count is directed against the Attorney General. If basically iterates the relief requested in the fifth count because of the fact that the office of the Attorney General is the counsel to the Board and brings all necessary judicial proceedings on behalf of the Board. [at 415-416; footnotes omitted].
The trial judge dismissed the complaint and plaintiff now appeals. We shall consider separately the allegations against the two classes of defendants  i.e., (I) the nonpublic defendants, and (II) the public defendants.
As will be seen, we affirm the decision dismissing the complaint against the nonpublic defendants on the ground that plaintiff has failed to exhaust its administrative remedies. As to the public defendants, we affirm on the ground that their actions constituted a proper exercise of discretion.

*86 I

As to the nonpublic defendants (corporate defendants and individual optometrists)
In the complaint against these defendants plaintiff seeks two kinds of relief: (a) remedies not involving money damages (an injunction against continuance of the allegedly illegal actions of defendants, a declaration that certain contracts and agreements of defendants are null and void, and an order directing them to move from their present locations), and (b) money damages (for an accounting, damages for interference with business profits, for violation of the New Jersey Antitrust Act, for unfair competition and malicious tort).
Since each class of remedy invokes different principles of law they will be considered separately.

Relief (a)

Remedies other than money damages
This type of relief is sought in all counts of the complaint against the nonpublic defendants. In support of its right to such relief, plaintiff has invoked the alleged violations of the Optometry Act set forth in the complaint. However, these alleged violations are properly cognizable in the first instance by the Board.
Enforcement of the provisions of the act is vested in the Board. By N.J.S.A. 45:12-11 the Board is empowered to, and indeed must, revoke or suspend the license of any optometrist who may be in violation of any of the provisions in that section. Among the violations warranting such action is "[a]ny violation of rule or regulation duly promulgated by the board hereunder or of any provision of this chapter." N.J.S.A. 45:12-11(s) (emphasis supplied).
Pursuant to its granted powers, when charges are preferred the Board, or a majority thereof, is to conduct hearings thereon. It has the power to issue subpoenas and to *87 compel the attendance of witnesses. The charges are to be served on the accused, who also is given the power of subpoena. He has the right to cross-examine witnesses against him, to produce witnesses in his own defense and to appear personally or by counsel. N.J.S.A. 45:12-12. After such hearing the Board must reduce its findings to writing, and if the Board unanimously finds that the charges, or any of them, are sustained, it may, in its direction, revoke or suspend the certificate of registration. And no person shall practice optometry whose certificate has been revoked or suspended. N.J.S.A. 45:12-13. If plaintiff had filed charges with the Board, plaintiff would thus have an effective remedy to prevent the acts which it seeks to suppress by its complaint herein. Finally, all rulings of the Board in refusing to issue or refusing to renew, or suspending or revoking a certificate, shall be reviewable in the Superior Court "by a proceeding in lieu of prerogative writ." N.J.S.A. 45:12-14. Thus, only after the decision of the Board does the court function begin.
Nonetheless, plaintiff argues that its action was equivalent to the former prerogative writ of mandamus. But R. 4:69-5, governing such actions, specifically provides:
Except where it is manifest that the interest of justice requires otherwise, actions under R. 4:69 shall not be maintainable as long as there is available a right of review before an administrative agency which has not been exhausted.
In Brunetti v. New Milford, 68 N.J. 576 (1975), the Supreme Court stated:
This Court has recognized that the exhaustion of remedies requirement is a rule of practice designed to allow administrative bodies to perform their statutory functions in an orderly manner without preliminary interference from the courts. Ward v. Keenan, supra, 3 N.J. at 302. Therefore, while it is neither a jurisdictional nor an absolute requirement, there is nonetheless a strong presumption favoring the requirement of exhaustion of remedies. Roadway Express, Inc. v. Kingsley, 37 N.J. 136, 139 (1962); East Brunswick Tp. Bd. of Education v. East Brunswick Tp. Coun., 48 N.J. 94, 102 (1966); Pleasantville Taxpayers v. City of Pleasantville, 115 N.J. Super. *88 85, 88 (App. Div. 1971), certif. den. 59 N.J. 268 (1971); Patrolman's Benev. Assoc. v. Montclair, 128 N.J. Super. 59, 64 (Ch. Div. 1974), aff'd 131 N.J. Super. 505 (App. Div. 1974); for a general review of authorities see Central R. Co. v. Neeld, 26 N.J. 172, 178-81 (1958), cert. den. 357 U.S. 928, 78 S.Ct. 1372, 2 L.Ed.2d 1371 (1958).
Admittedly, the exhaustion requirement will be waived where "the interest of justice so requires." Ward v. Keenan, supra, 3 N.J. at 308; Waldor v. Untermann, 10 N.J. Super. 188 (App. Div. 1950). This has been held to mean that exhaustion of remedies will not be required where administrative review will be futile, where there is a need for prompt decision in the public interest, where the issues do not involve administrative expertise or discretion and only a question of law is involved and where irreparable harm will otherwise result from denial of immediate judicial relief. See generally, Pressler, Current New Jersey Court Rules, Comment R. 4:69-5, at 748-49 (1975). [at 588-589; footnotes omitted]
None of the cited exceptions apply here. Indeed, administrative review by the Board will not be futile and it is manifest that the Board, whose members are licensed optometrists, possesses the relevant expertise which is peculiarly suited to determine the issues here projected.
The policy of the Supreme Court rule not to entertain a proceeding in lieu of prerogative writs before exhaustion of administrative remedies will be adhered to except when the question is solely one of law raising an important question of statutory construction. Deaney v. Linen Thread Co., 19 N.J. 578, 581 (1955). That is not the situation here. As said by then Judge (later Justice) Hall in Kotlarich v. Ramsey, 51 N.J. Super. 520 (App. Div. 1958):
The exhaustion principle is not simply a technical one; it is founded on the sound policy that the judicial branch should exercise due restraint in interfering in the administrative field, where the Legislature has committed the matter for determination by an agency and prescribed the course to be followed therein, unless and until that course has been completed, and then only to the extent of the well recognized principles of the scope of judicial review. [at 540]
Further, the doctrine is applicable where the claim is cognizable in the first instance by an administrative agency, *89 and the court's role is essentially one of reviewing the agency's action only after the administrative action has run its course. Daaleman v. Elizabethtown Gas Co., 150 N.J. Super. 78, 83 (App. Div. 1977, certif. granted 75 N.J. 537 (1977)), cross petition for certif. granted 75 N.J. 590 (1977). Such is the circumstance here. N.J.S.A. 45:12-14 purports to establish a procedure in the courts for review of the Board's action. We do not pass upon the question whether this section violates the principles established in Winberry v. Salisbury, 5 N.J. 240, cert. den. 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950).
Plaintiff also argues that the trial judge erred in holding that it should have appealed to the Appellate Division rather than filing its complaint in the Chancery Division.[1] In its reply brief plaintiff contends that "absent the holding of a proper hearing there can be no direct Appellate Division review." With that statement we agree, for it is only after such a hearing and the development of a proper record, with findings and conclusions, that this court can properly exercise its reviewing function  thus demonstrating the wisdom of the requirement of the doctrine of exhaustion of administrative remedies. But the short answer to plaintiff's argument is that it, or any of its 555 members, could have obtained that hearing by filing charges with the Board pursuant to N.J.S.A. 45:12-11, to be followed by the hearing mandated by N.J.S.A. 45:12-12.
*90 Plaintiff argues, however, that such procedure would be futile because, the Board and Attorney General have already said that they would not proceed further. That position was based on the informal presentation of information by plaintiff, the nature or scope of which we do not know  again because there was no hearing with sworn testimony or other development of a record which we might appraise. The fact that a proper record was not developed does not excuse plaintiff from following the clear procedure directed by the statute.
At oral argument, in response to the court's questions as to whether plaintiff had ever filed a charge against defendants with the Board, plaintiff's attorney asserted that many "complaints" were made against them. We were advised that those complaints were embodied in several letters sent by representatives of plaintiff to the Attorney General's office and in several informal conferences. We asked that copies of the letters be submitted to us, even though they are not part of the record.
We have received copies of such correspondence. We have also been supplied with transcripts of hearings before the Office of Consumer Affairs concerning alleged wrongful acts of opticians, and purported transcripts of informal conversations apparently by telephone between some interested parties. We consider that the transcripts of tapes are not worthy of comment on the issue before us.
Counsel for plaintiff asserts that the letters and other documents submitted "do not constitute a formal record; they do not involve an administrative adversary hearing; they are submitted now to demonstrate that, in fact, complaints and charges were brought to the attention of the State Board and the Attorney General; that no action was taken thereon, and that consequently mandamus was the proper remedy."
We have examined the letters even though they are not part of the record. The letters do reveal that the Association was "complaining" about activities which it believed constituted violation of the Optometry Law; that plaintiff submitted *91 certain information to the Assistant Attorney General in charge of the matter; that his office interviewed witnesses suggested by plaintiff, conducted its own investigation and finally came to the conclusion that "there is neither a proper basis in law or in the facts which we have reviewed upon which to bottom a complaint charging a violation of the optometry statute or to justify a `rule-making' investigation by the Board of Optometrists." (Letter from the Assistant Attorney General to plaintiff's attorney dated April 9, 1975).
It is also clear that, in his letter of April 18, 1975, plaintiff's attorney disputed the conclusions of the Assistant Attorney General and reiterated his opinion that he had demonstrated a violation of the Optometry Law. Finally, in his letter of October 31, 1975 the president of the Board expressed its concurrence with the Attorney General's office and stated that the Board "will not proceed regarding any alleged violations of the Optometry Law nor undertake any rule-making action as a result of the evidence which the Association presented to us."
While the correspondence reveals that plaintiff was "complaining" of certain activities and evidences a difference of opinion between plaintiff's attorney and the office of the Attorney General as to whether in fact and law violations of the Optometry Act were demonstrated, they do not reveal any specific charge of a violation of the Optometry Act, or who might be guilty of any such violation. It is also noteworthy that the correspondence was only between plaintiff and its representatives, the Attorney General's office and the Board. The nonpublic defendants here had no notice of what was contained in the letters, were not served with them, or given the opportunity to have a hearing pursuant to N.J.S.A. 45:12-12. The letters and other information supplied to us fall far short of a "charge" which would invoke the administrative proceeding pursuant to that section. N.J. *92 S.A. 45:12-11 provides that "any person" may file charges of violation of the Optometry act." Obviously the Association could have filed such charges. They did not do so. Patently, plaintiff failed to exhaust its administrative remedy before invoking the jurisdiction of the courts.
For the reasons herein stated, dismissal of the complaint insofar as it seeks remedies other than money damages is affirmed.

Relief (b)

Money damages
Money damages are sought in Counts Three (charging unjust enrichment, unfair competition and interference with business opportunities of plaintiff and its members); Count Four (charging conspiracy and fraud); Count Seven and Count Eight (charging violation of the New Jersey Antitrust Law); Count Nine (charging unfair competition); Count Ten (charging conspiracy to effect "illegal * * * and tortious objects"); Count Eleven (charging defendants Kaplan and Noble with violations of the Optometry Act and Antitrust Law); Count Twelve (charging the corporate defendants with responsibility for the acts of the individual defendants), and Count Thirteen (alleging no specific cause of action).
The trial judge dismissed plaintiff's claims for money damages for the reason that plaintiff, a nonprofit corporation, is not engaged in business, none of its property rights have been invaded by defendants and therefore it suffered no damage. 144 N.J. Super. at 425-428. We agree and consider that no further discussion as to the money damage claims is necessary. For those reasons the dismissal of those counts of the complaint seeking such relief against the non-public defendants is affirmed.

*93 II

As to the public defendants (Board of Optometry and the Attorney General)
In arguing that the trial judge was in error in holding that plaintiff should have appealed to the Appellate Division rather than suing in the trial division, plaintiff contends that the relief which it sought was by way of the former prerogative writ of mandamus and not that of certiorari, as would be called for in a "review" by the Appellate Division.[2]
We accept the complaint for what plaintiff says it is  one seeking relief formerly available through the prerogative writ of mandamus. Assuming this to be so, plaintiff ignores the function, scope and limitations of that writ.
The limitations upon the exercise of the ancient extraordinary remedy of mandamus were summarized by Justice Heher in Switz v. Middletown Tp., 23 N.J. 580 (1957):
It is a coercive process that commands the performance of a specific ministerial act or duty, or compels the exercise of a discretionary function, but does not seek to interfere with or control the mode and manner of its exercise or to influence or direct a particular result. Mandamus lies to compel but not control the exercise of discretion. Roberts v. Holsworth, 10 N.J.L. 57 (Sup. Ct. 1828); Benedict v. Howell, 39 N.J.L. 221 (Sup. Ct. 1877). Unless the particular duty be peremptory, the fair exercise of judgment and discretion is the province of the functioning authority. The right of the relator and the public duty sought to be enforced must be both clear and certain. Uszkay v. Dill, 92 N.J.L. 327 (Sup. Ct. 1919); Edward C. Jones Co. v. Town of Guttenberg, 66 N.J.L. 58 (Sup. Ct. 1901), affirmed Id., 66 N.J.L. 659 (E. & A. 1901); Clark v. City of Elizabeth, 61 N.J.L. 565 (E. & A. 1898). Mandamus issues "to compel the performance, in a specified manner, of ministerial duties so plain in point of law and so clear in matter of fact that no element of discretion *94 is left as to the precise mode of their performance, but as to all acts or duties depending upon a jurisdiction to decide questions of law or to ascertain matters of fact, on the part of the officer or body at whose hands their performance is required, mandamus will not lie." Mooney v. Edwards, 51 N.J.L. 479 (Sup. Ct. 1889). [at 588-589]
Further, "* * * mandamus will not lie if the duty to act is a discretionary one and the discretion has been exercised." U.S. Trust Co. of New York v. State, 69 N.J. 253, 259 (1976), rev. on other grounds 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977).
As we have said above, plaintiff submitted to the Board various letters and documents concerning the manner in which defendants were practicing optometry. Plaintiff claimed that defendant's actions constituted violations of the Optometry Act. Defendant Board examined the documents furnished by plaintiff and made its judgment (exercising its discretionary function) that the information did not establish violations of the act. True, plaintiff wanted the Board to conclude otherwise. As was said in Switz v. Middletown Tp., supra, the "fair use of judgment and discretion is the province of the functioning authority." 23 N.J. at 588. Therefore, mandamus does not lie.
We reach a similar conclusion as to the Attorney General. He too, exercised his judgment that the information supplied by plaintiff did not establish violations of the law. Again, in exercising his discretionary function, he rendered his judgment in a way contrary to that which plaintiff desired. Plaintiff may not use mandamus to compel a decision in a particular way  its way.
The duty of a prosecutor is summarized in 63 Am. Jur.2d, Prosecuting Attorneys § 26 at 354, as follows:
A duty rests upon the prosecuting attorney to prosecute in his county or district, on behalf of the people, all public offenses.
As a general rule, however, this duty is not absolute, but qualified, requiring of the prosecuting attorney only the exercise of a sound discretion, which permits him to refrain from prosecuting whenever he, in good faith and without corrupt motives or influences, thinks *95 that a prosecution would not serve the best interests of the state, or that, under the circumstances, a conviction could not be had, or that the guilt of the accused is doubtful or not capable of adequate proof. Thus, it has been held that mandamus will not lie to compel a prosecuting attorney to institute a criminal prosecution, since the acts of a prosecuting attorney are not purely ministerial acts, but involve in a large measure learning and the exercise of discretion. But the fact that his duties rise to a dignity which permits him to exercise discretion will not excuse neglect of duty on his part. And the privilege of exercising his sound discretion does not permit, failure to prosecute in order to conform with the general sentiments of the people living in his district. Nor does unlikelihood that the jury will return a verdict for conviction, because of popular prejudice existing against such prosecution, excuse the prosecuting attorney from performing his duties in regard to prosecuting. [footnotes omitted].
To same effect, see In re Investigation Regarding Ringwood Fact Finding Comm., 65 N.J. 512 (1974); State v. LeVien, 44 N.J. 323 (1965), and State v. Winne, 12 N.J. 152 (1953).
In People v. Adams, 43 Cal. App.3d 697, 117 Cal. Rptr. 905 (D. Ct. App. 1974), it was held there was no review by way of the appellate process of a district attorney's exercise of his discretionary power to determine whether or not to prosecute in a particular situation, nor can a court control this power by mandamus. See also, State's Attorney of Baltimore City v. Baltimore, 274 Md. 597, 337 A.2d 92 (Ct. App. 1975).
There is no showing here that the Attorney General in exercising his discretion did not act in good faith or for any other invidious reason.
In sum, plaintiff's theme is that the Board and the Attorney General did not act at all in furtherance of their respective duties and it therefore seeks to compel them to act in that respect. Not so. The duty of each was a discretionary one. They exercised their discretion, and, that being so, mandamus does not lie. U.S. Trust Co. of New York State, supra, 69 N.J. at 259.
For the foregoing reasons the order dismissing the complaint is affirmed.
NOTES
[1] Assuming the action to be one in lieu of the prerogative writ of mandamus, it should have been filed in the Law Division. However, since the complaint was filed in the Chancery Division it could proceed to adjudicate the matter. N.J. Const. (1947), Art. VI, § III, ¶ 4. See Archard v. Mesmer, 110 N.J. Super. 560, 561 (App. Div. 1970). We do not reach the question whether the refusal of the public defendants to act further is an "action" reviewable by this court. See Central Railroad Co. v. Neeld, 26 N.J. 172, 184, cert. den. 357 U.S. 958, 78 S.Ct. 1373, 2 L.Ed.2d 1371 (1958), and the trial judge's opinion at 144 N.J. Super. at 417.
[2] Plaintiff's arguments are reminiscent of the maze which existed among the prerogative writs before adoption of our N.J. Const. (1947), Art. VI, § V, ¶ 4, and whose unlamented passing has been thought to be irrevocably entombed.