JAMES E. HAAS AND CATHERINE HAAS, HUSBAND AND WIFE, PLAINTIFFS, v. NEW JERSEY PINELANDS COMMISSION, STATE OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Chancery Division Burlington County

Decided February 1, 1988.

*Patrick F. McAndrew* for plaintiffs (*Brandt, Haughey Penberthy, Lewis & Hyland, P.A.,* attorneys)

*William H. Lorentz,* Deputy Attorney General for defendants (*W. Cary Edwards,* Attorney General of New Jersey)

HAINES, A.J.S.C.

This opinion addresses numerous substantive and procedural issues relating to the Pinelands Commission ("the Commission").

James E. Haas, Jr. and Catherine Haas (both sometimes referred to as "Haas") own a gravel pit within the Pinelands Area in Tabernacle Township, Burlington County, New Jersey. Use of the pit commenced many years before either Pinelands or Tabernacle land use legislation was adopted. The Haas, claiming this use to be nonconforming and vested, insist upon their right to its continuance, an insistence with which the Tabernacle Planning Board, in approving their site plan application, has agreed, as has this court in an unpublished companion case. The Board's approval is now before the Pinelands Commission for review and potential denial.

On June 10, 1985, prior to the commencement of the Planning Board proceedings, Haas, as required by Pinelands legislation, filed an application with the Commission for development approval: authority to continue the use of the gravel pit. Before any development approval had been granted, however, Haas conducted excavating operations in the pit. This activity resulted in the Commission's institution of a suit on August 29, 1985, for restraints. No responsive pleadings were filed by Haas but a consent order disposing of the suit was executed by this court

on October 15, 1985. That order directed the Commission to issue a Certificate of Filing attesting to the completeness of the Haas application no later than September 20, 1985. It prohibited Haas from conducting any resource extraction operations in the gravel pit "unless and until all necessary development approvals are obtained from the proper authorities, including but not limited to Tabernacle Township and the Burlington County Soil Conservation District, and such approvals are reviewed by the Pinelands Commission. . . ."

The master plan and land use ordinances of Tabernacle Township were certified by the Pinelands Commission on September 6, 1985, thereby providing the municipality with jurisdiction over development applications in the Pinelands. The Haas application then before the Pinelands Commission was therefore transferred to the Township Planning Board for decision.

A regulation contained in the Pinelands Commission Master Plan ("CMP") permits existing resource extraction activities to continue provided certain registrations or permits were obtained prior to February 8, 1979. The Planning Board refused to apply the regulation, holding that it was unconstitutional. That determination has been affirmed by this court in *Esposito,* today's companion case.

The within action was commenced on August 10, 1987. It charges the Commission with various state and federal constitutional transgressions, arbitrary actions, violations of the Municipal Land Use Law, *N.J.S.A.* 40:55D–1, *et seq.* and advances a theory of estoppel. Haas seeks a judgment enjoining the enforcement of the CMP registration-permit regulation, and awarding damages, both punitive and compensatory, attorneys fees and costs as well as other equitable relief. The Attorney General moves for summary judgment dismissing the complaint. This opinion, denies that motion, but grants a partial summary judgment.

## A. Jurisdiction

The Haas complaint claims that the registration-permit regulation adopted by the Commission and many of its procedures are unconstitutional. The procedural questions raised are particularly significant. They include the following:

1. Is the Pinelands Commission limited in its review of the development approval to the record made by the Planning Board? If not, what is the function of the Planning Board in Pinelands matters? How does the Municipal Land Use Law affect these questions?

2. What is the allowable scope of the Commission's review? Is it permitted to raise issues not raised before the Planning Board?

3. What right, if any, does a developer have to present evidence at a Commission hearing?

4. When review issues have been referred to an Administrative Law Judge for a hearing what is the scope of that judge's jurisdiction?

5. Are the rules which govern the proceedings of the Commission unconstitutionally vague?

6. What jurisdictional authority is shared, if any, by the Commission and the Superior Court?

■ The fact that these questions are significant does not permit this court to address them. *R.* 2:2–3 provides:

(a) As of Right. Except as otherwise provided by *R.* 2:2–1(a)(3) (final judgments appealable directly to the Supreme Court) appeals may be taken to the Appellate Division as of right

. . . .

(2) To review final decisions or actions of any state administrative agency or officer, and to review the validity of any rule promulgated by such agency or officer ..., except that review pursuant to this sub-paragraph shall not be maintainable so long as there is available a right of review before any administrative agency or officer, unless the interest of justice requires otherwise....

The issues raised by Haas concerning the regulations and procedures of the Commission, therefore, must be heard by the Appellate Division. The proper action of this court is to transfer them to the Division pursuant to *R.* 1:13–4. *Township of South Orange Village v. Hunt,* 210 *N.J.Super.* 407 (App.Div. 1986). That is the proper forum even if its jurisdiction appears to be concurrent or overlapping with the trial court. *Pascucci v. Vagott,* 71 *N.J.* 40 (1976)

This opinion, however, disposes of all remaining issues except those relating to civil rights damage claims based upon the alleged unconstitutionality of the Commission's rules and procedures. Those claims must be tried by this court but only after the constitutional questions have been determined by the Appellate Division, and then only if they, or some of them, are determined favorably to Haas.

## B. *The Entire Controversy Doctrine*

The Commission argues that the complaint in this matter must be dismissed because the issues raised by Haas should have been raised in the 1985 restraining action. I disagree.

The entire controversy doctrine was recognized in *Ajamian v. Schlanger*, 14 *N.J.* 483 (1954):

> The policy of the new practice contemplates that the Superior Court litigant not only should initially plead any legal and equitable claims or defenses, whether or not consistent, supporting his position in the controversy and seek all legal or equitable remedies which he may desire, but also, with the aid of the broad discovery and pretrial procedures by which he may obtain all the facts material to the positions of both sides, that he should avail himself of the liberality allowed to form and reform his pleadings and the pretrial order accordingly, the opportunities for such amendment being restricted, in any substantial degree, only by *R.* 4:29–1(15) and 4:15–2 applicable to amendments offered after the entry of the pretrial order, or during trial. [at 485]

Fairness and knowledge are essential ingredients of the doctrine. Thus, in *Wm. Blanchard Co. v. Beach Concrete Co.*, 150 *N.J.Super.* 277 (App.Div.1977), the court said:

> The point, of course, is that a component of the controversy may not be unfairly withheld, and a withholding is by definition unfair if its effect is to render the pending litigation merely one inning of the whole ballgame. [at 294]

The Appellate Division, in *The Malaker Corp. v. First Jersey National Bank*, 163 *N.J.Super.* 463 (App.Div.1978), considered harshness in applying the entire controversy rule, saying:

> We do not regard this result as a harsh one. Plaintiffs were in possession of all facts necessary to their present theories of recovery long before the bank initiated the state court litigation seeking recovery of the amounts loaned ... If there were breaches of this agreement, Malaker knew of them, by personal

involvement therein, well before any litigation commenced. Nothing was discovered after the litigation commenced relevant to the matters in the present action. [at 499–500]

In *Zaromb v. Borucka*, 166 *N.J.Super.* 22, 27 (App.Div.1979), the court noted that both *Blanchard* and *Malaker* "impliedly hold that if a party does not know of a related claim, the entire controversy doctrine does not operate as a bar to a second suit on the unknown claim."

Finally, in *Brown v. Brown*, 208 *N.J.Super.* 372 (App.Div. 1986), the court dealt with the obligation to raise claims based upon facts occurring after litigation commenced. It held that the entire controversy doctrine required an application to the court for permission to file a supplemental pleading asserting the claim. The issue would then be left to the discretion of the court. Principles of judicial administration, such as unacceptable trial delay, might require the new claim to be tried separately. "... [N]o matter how germane the subject matter of the supplemental pleading, it may nevertheless, on balance, have a greater potential for vexation and for prejudice to the parties if joined with the original action than if reserved for later and separate action." *Id.* at 381.

In *Brown*, the application to the court was not made. Nevertheless, the court held that the entire controversy doctrine was not a bar to the later assertion of the claim, a marital tort claim which arose after commencement of a divorce action. The court noted that the "tort claim is sufficiently distinct and independent from the cause of action for divorce and equitable distribution to permit separate adjudication without prejudicing the integrity of those prior adjudications." *Id.* at 383. It reviewed the litigation history, finding that the tort claim had been the subject of a separate, vigorously contested suit in which no preclusionary defense had been raised. It therefore held that the "defendant waived the defense of preclusion, which, we are satisfied, is an affirmative defense required to be pleaded ... It is well settled that an affirmative defense is waived if not pleaded or otherwise timely raised." *Id.* at 384.

█ The Commission's suit against Haas was settled before any responsive pleading was filed. No issues which were raised or could have been raised in that proceeding were argued to the court. Haas obviously recognized the impropriety of undertaking excavation proceedings without the Commission's approval and agreed to discontinue them, consenting to a restraining order for that purpose. That order, while imposing the restraint, also recognized the on-going consideration of Haas' development application, promising filing certification by a date certain. If the parties were required by the entire controversy doctrine to anticipate litigating the many issues raised in the present proceeding, it would have been necessary for them to reserve every potential issue which they could anticipate or to agree (if legally permissible [1]) that the entire controversy doctrine would not apply. This would have encumbered their efforts to resolve the controversy without further litigation, contrary to the strong judicial policy encouraging the settlement of controversies. *Rynar v. Lincoln Transit Co., Inc.*, 129 *N.J.L.* 525 (E. & A. 1943); *Winfield Mutual Housing Corp. v. Middlesex Concrete Products and Excavating Corp.*, 39 *N.J.Super.* 92, 98–101 (App.Div.1956).

No court has addressed the entire controversy doctrine as affected by New Jersey settlement policy. This court holds that the settlement doctrine outweighs the entire controversy doctrine in the context of this case, that it would not have been in the interest of efficient judicial administration to insist upon the raising of additional issues which might thwart settlement. It is also my conclusion that it is not fair in the context of this case to apply the doctrine. Issues now raised were unknown or had not matured at the time the consent order was signed. Haas could not know what issues would arise from a Planning Board hearing which had not taken place or from a Commission review proceeding not yet commenced. Surely Haas and the

---

[1]Apparently permissible in view of the waiver doctrine adopted in *Brown.*

Commission both expected the Planning Board to review the development application without the burden of any pending litigation. Had the Planning Board's decision not been challenged by the Commission, Haas would have had no issues to litigate. The present issues arose only because the Commission decided to review the Board's development approval. Haas could not have anticipated that review in 1985.

## C. *Estoppel—Waiver*

Haas argues that the Commission permitted the approval process to continue for two years without raising the registration-licensing issue and is therefore estopped, or perhaps has waived the right to raise that issue now. The argument is not supportable. In *Summer Cottagers' Ass'n. of Cape May v. City of Cape May*, 19 *N.J.* 493 (1955), the court said:

> The doing or forbearing to do an act induced by the conduct of another may work an estoppel to avoid wrong or injury ensuing from reasonable reliance upon such conduct. The repetition of one's act done or position assumed is not permissible where that course would work injustice to another who, having the right to do so, has relied thereon. [at 504]

In *Summer Cottagers'*, the court noted that "[t]he principal of estoppel *in pais* is not, for obvious reasons, given the same freedom of application against the public as against private persons." *Id.* at 503. It noted the difficulty which a municipality, for example, would have in deviating from a legislative grant of power.

Haas was not required to undertake the approval process without first determining the constitutional validity of the regulation in question. An immediate challenge could have been launched in the Appellate Division pursuant to *R.*2:2–3. Haas chose first to establish the non-conforming use. That choice may have been wise since otherwise the Appellate Division would have no factual basis upon which to base its decision. It cannot be said that Haas acted or refrained from acting by reason of any conduct of the Commission. The regulation was the basis of the Commission's 1985 restraining action; its

existence and the Commission's reliance upon it were therefore known to Haas at that time. The Commission had no obligation to enforce its regulation before the Planning Board proceedings were completed. Those proceedings could have resulted in a denial of development approval.

The estoppel argument must be rejected.

### D. *The Tort Claims Act*

The Commission contends that the Tort Claims Act, *N.J.S.A.* 59:1-1 *et seq.,* provides immunity for its actions and that, in any event, the act's notice requirements with respect to the present proceeding were not followed, thus barring the claim.

It is hornbook law that a state statute may not frustrate federal legislation. Thus, the provisions of the Tort Claims Act cannot be relied upon as a defense to a civil rights claim under 42 *U.S.C.* § 1983. *T & M Homes v. Mansfield,* 162 *N.J.Super.* 497, 506 (Law Div.1978). Furthermore, notice of claim provisions are not recognized in suits brought under the federal Civil Rights Act. *Lloyd v. Stone Harbor,* 179 *N.J.Super.* 496, 512 (Ch.Div.1981).

This is a civil rights action. The Commission's reliance upon the Tort Claims Act is misplaced.

### E. *Punitive Damages*

Haas claims entitlement to punitive damages. In *City of Newport v. Fact Concerts, Inc.,* 453 *U.S.* 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), a § 1983 action, the United States Supreme Court held that punitive damages could not be recovered against a municipality. The *City of Newport* holding has been extended to various local public entities: *Okeson v. Tolley School District,* 570 *F.Supp.* 408 (D.N.D.1983), typically, dismissed a claim for punitive damages against a school district. 1 *Cook & Sobieski, Civil Rights Actions* ¶ 4.08 (1985) collects the cases and says:

*City of Newport* involved an action against a municipality. The holding, however, also applies to other local government entities as well as to suits against local public officials sued in their official capacity. [at 4–74]

The reasoning in *City of Newport* was based upon public policy, the history of the Civil Rights Act and a finding that Congress had not intended to subject municipalities to such damages. Here we deal not with a municipality, but with an independent state Commission. The obligation of a state entity to respond to a § 1983 claim for punitive damages has not been considered in any case brought to the court's attention. The Supreme Court's public policy analysis in *City of Newport*, however, is appropriately applied here.

■ *City of Newport*, in concluding that municipalities were not responsible for punitive damages, set forth the following considerations of public policy:

(1) Punitive damages are intended to punish the tortfeasor. If they are assessed against a municipality, its innocent taxpayers are punished. That is unreasonable and unjust.

(2) It is the malicious act that invites a punitive damage award. A municipality, apart from its officials, can have no malice.

(3) The Supreme Court has never "... suggested that punishment is as prominent a purpose under the statute as are compensation and deterrence ... the retributive purpose is not significantly advanced, if it is advanced at all, by exposing municipalities to punitive damages."

(4) It is not clear that the prospect of punitive damage awards against municipalities will deter their officials from wrongdoing. Awards of compensatory damages alone may be enough to induce the public to vote against official wrongdoers.

(5) Public officials are themselves liable for punitive damages and that is an effective means of deterrence.

(6) The punitive damage remedy, if made available against municipalities, would risk their financial integrity.

(7) Punitive damages are measured by the wealth of the tortfeasor. "[T]he unlimited taxing power of a municipality may have a prejudicial impact on the jury ...". [453 U.S. at 266–271, 101 S.Ct. at 2759–2762]

These considerations apply to a state public entity with the same force as they do to local public entities. They require the conclusion that the Pinelands Commission is not susceptible to a punitive damages award in a § 1983 action.

## CONCLUSION

This opinion disposes of all issues except those involving civil rights damage claims. Those claims are based upon the alleged unconstitutionality of the registration-permit regulation of the Commission and its various procedural rules and actions, allegations which must be decided by the Appellate Division and not this court. The constitutional issues are therefore transferred to that Division for further action.