Accordingly, the court enters orders in conformity with its opinion.

775 A.2d 243

ROBERT WILLIAM MOSS, PLAINTIFF, v. ROBERT C. SHINN, COMMISSIONER, NEW JERSEY DEPARTMENT OF ENVIRON-MENTAL PROTECTION, JAMES F. HALL, ASSISTANT COM-MISSIONER FOR NATURAL RESOURCES, AND GREGORY A. MARSHALL, DIRECTOR, DIVISION OF PARKS AND FOREST-RY, DEFENDANTS.

Superior Court of New Jersey
Law Division
Mercer County

Decided May 30, 2000.

Robert William Moss, *pro se.*

*A. Colleen Malloy,* Senior Deputy Attorney General, for Robert C. Shinn, Commissioner Department of Environmental Protection, James F. Hall, Assistant Commissioner for Natural and Historic Resources, Gregory A. Marshall, Director Division of Parks and Forestry (*John J. Farmer, Jr.,* Attorney General of the State of New Jersey, attorney).

FEINBERG, A.J.S.C.

### *PROCEDURAL HISTORY*

On October 20, 1999 the plaintiff, Robert William Moss, filed a complaint in lieu of prerogative writ against the defendants, Robert C. Shinn, Commissioner of the New Jersey Department of Environmental Protection ("DEP"), James F. Hall, Assistant Commissioner for Natural and Historic Resources and Gregory A. Marshall, Director of the Division of Parks and Forestry. The complaint sought relief in the form of mandamus to force the defendants, representatives of the DEP: (i) "to correct the trail use sign at the junction of the Cooper Union Trail and Morris Avenue" to conform with the November 12, 1996 letter from Richard F. Barker, Assistant Director of the Division of Parks and Forestry, stating that the Cooper Union Trail will be designated for hiking only; and (ii) to "enforce trail use restrictions in Ringwood" by one of three methods: "instituting a volunteer bicycle patrol program..., posting a ranger...or closing Ringwood to bicycles..." The defendants filed an answer on December 1, 1999.

On April 28, 2000 the defendants filed a Notice of Motion to Dismiss for Failure to State a Claim; or in the alternative

Summary Judgment; or in the alternative a transfer of the matter to the Appellate Division. For the reasons set forth herein, the court grants the defendants motion to dismiss for failure to state a claim.

## I.

Ringwood State Park and Ramapo Mountain State Forest north of Skyline Drive comprise a portion of the State Park administered by the Department of Environmental Protection, Division of Parks and Forestry, State Park Service ("Department" or "DEP") and referred to as "Ringwood" or "Park". Ringwood consists of approximately 25,000 acres, spanning four counties and 19 municipalities. In addition to the 200 miles of trails within Ringwood, the Department also administers its roads, parking lots, bridges, various bodies of water portions of which are designated for swimming, boating and fishing, three (3) historic districts, the New Jersey Botanical Gardens, and more than one hundred (150) structures, including sixteen (16) dams, the historic Ringwood Manor House and the Skylands Manor House as well as three (3) concession operations.[1]

In addition to maintenance of these facilities, the Department has supervisory and law enforcement responsibilities within all land and water areas administered as part of Ringwood for statutes, rules and regulations governing swimming, boating, hunting, fishing, camping, fire and alcohol usage, timber encroachment, motor vehicle usage, trail usage and parking. The Department is also involved in traffic control, particularly during the summer months and when special events are held at the park. Some of these activities involve the potential for personal injury and property damage and therefore, by their nature, require a higher level of enforcement presence. In comparison with other activities at

---

[1] The Department submitted the affidavit of T. Mark Pitchell, the Superintendent of Ringwood since 1991, in support of its motion herein.

Ringwood, trail use—whether hiking or bicycling—involves a low potential for personal injury and property damage.

Approximately 200 miles of trails consisting of designated multi-use trails, hiking trails and undesignated trails extend throughout Ringwood. The trails are primarily remote areas of Ringwood, not frequented by the large percentage of park visitors. The rangers are supervised by a Chief Ranger who is primarily responsible for supervisory and administrative functions.[2] The DEP submits that due to the size of Ringwood, its many and varied public recreational activities, the number of rangers as-signed for duty on each shift, the extent of their responsibilities, and the changing nature of the activities in Ringwood at any given time, the DEP made decisions on a continuous basis regarding the daily assignment of rangers. Primary considerations in the alloca-tion of available law enforcement resources are the pattern of public usage within Ringwood and the likelihood of the occurrence of personal injury or property damage in the daily activities.

The Department submits that since 1995 the plaintiff and the New York New Jersey Trail Conference ("NYNJTC") have sought administrative action to restrict bicycles to designated routes in Ringwood. The format of the trail use signs was approved by the Department and the NYNJTC in July 1996. In cooperation with the NYNJTC and the plaintiff, the Department has installed and maintains trail use signs indicating the permitted uses on desig-nated trails. In addition, as part of this cooperative effort, the Department distributes a trail use pamphlet prepared by the NYNJTC and has installed trail head signs and parking lot signs designed to explain the trail use restrictions and signing system in Ringwood before the public enters upon a trail.

The record reflects that the Department primarily enforces trail use restrictions through a system consisting of positive signing indicating the uses allowed on designated trails, voluntary compli-

---

[2] The Department represents that during 1999, one ranger and one trainee were on duty at any one time.

ance with the trail signs, distribution of trail use pamphlets explaining the State park trail use restrictions and signing system, and supervising and training voluntary bike patrols responsible for educating trail users about the trail use restrictions and signing system. Rangers do, on occasion, monitor trails and direct hikers and bicyclists in the proper usage of same.

Plaintiff is a hiker who utilizes the trails within Ringwood and who has an interest in excluding bicycles from trails designed only for hiking. Plaintiff represents that the Department has taken no action in Ringwood State Park and Ramapo State Forest north of Skyline Drive to enforce State Park Service trail use regulations restricting bicycles to designated routes. As a result, the plaintiff asserts that bicycles are being operated on trails in Ringwood without regard to these regulations.

## II.

The Department is authorized by *N.J.S.A.* 13:1B–15.100 *et seq.,* and the "State Park and Forestry Resources Act", *P.L.* 1983, *c.* 324, *N.J.S.A.* 13:1L–1 *et seq.* to develop, improve, protect, manage and administer Ringwood State Park and all other State forests, parks, recreation areas, historic sites and natural areas. The State Park and Forestry Resources Act ("Act") was enacted in 1983 as an amendatory and supplementary act designed to "update the statutes under whose authority the State's parks and forests are regulated and to provide for a more systematic and consistent approach to managing the State's recreational and natural area resources." Assembly Agriculture and Environment Committee Statement, Assembly No. 1515.

The Legislature found and declared in the Act "that the acquiring, planning, designing, developing, operating and managing of the State parks and forests is in the best interest of the citizens of this State and that the provision of recreational programs to all segments of the public enhances the public health, prosperity and general welfare and is a proper responsibility of the State." *N.J.S.A.* 13:1L–2. For the purposes of the Act, "recreational

activities" include, but are not limited to, fresh and salt water swimming, water skiing, boating and fishing, ice skating, snow skiing, camping, trail hiking, horseback riding, picnicking, bicycling, court and field games, track and field events, birdwatching, playground activities and golf. *N.J.S.A.* 13:1L–3(d).

The Act provides that it shall be the duty of the Department to provide recreational activities and programs within the State parks and forests for the benefit of the State's citizens. *N.J.S.A.* 13:1L–5(a). The Act authorizes the Department to adopt any rules or regulations necessary to implement the Act. *N.J.S.A.* 13:1L–19. Nothing in the Act mandates any specific measures to be taken in the management of trail systems in State parks; this is left to the Department's discretion.

In accordance with the Act, the Department adopted the State Park Service Code, *N.J.A.C.* 7:2 *et seq.* ("Code"). The Code provides that "[b]icycle riding is allowed and encouraged on all established State Park Service roads, and routes or paths designated for such use, unless restricted by posted signs." *N.J.A.C.* 7:2–2.25(a). Bicycles are prohibited on historic sites, walkways, natural trails and hiking trails. *N.J.A.C.* 7:2–2.25(*l* ). The use of trail signs in the park system is "positive" in that the signs indicate permitted uses, not prohibited uses. This is in accordance with the Department's policy of encouraging use and enjoyment of the State's parks by focusing enforcement activities on education and voluntary compliance with the various rules governing park usage. The use of signs is not mandated by the enabling statute or the Code. Thus, there may be trails that are designated for a particular use but which have no posted signs due to various reasons, including vandalism.

Mountain biking became common in northern New Jersey around 1990. Mr. Moss and the NYNJTC have sought administrative action through the Department to restrict bicycles to designated routes since 1995. The format of the trail use signs was approved by the State Park Service and the NYNJTC in July 1996. Installation of the trail use signs commenced in April 1997. The signs were installed in a cooperative effort between the State

Park Service, the NYNJTC, bikers and hikers. The signs have been replaced at a sufficient rate to maintain adequate signing on the trails at Ringwood. Thereafter, meetings, telephone calls and correspondence between Mr. Moss, the NYNJTC and the Department resulted in the further designation of trails, a trail user education program consisting of Trail Use Pamphlets to be distributed at State park entrances and the posting of educational signs at trail heads and in parking lots.

The Department primarily enforces trail use restrictions through a voluntary compliance system developed and implemented by the Department in cooperation with the plaintiff, the NYNJTC, and other volunteers at Ringwood. The voluntary compliance system consists of positive trail use signs indicating the uses allowed on designated trails, voluntary compliance with the trail signs, distribution of trail use pamphlets explaining the State park trail use restrictions and signing system, and voluntary bike patrols trained and supervised by the Department responsible for educating trail users about the trail use restrictions and signing system. This voluntary compliance system is in accordance with the Department's general policy to encourage use and enjoyment of the State parks by focusing enforcement activities on educational and voluntary compliance with various rules regulating park usage. Rangers also, on occasion, monitor trails to ensure compliance and education of trail users.

The record reflects that a letter from Assistant Director Richard F. Barker, dated November 12, 1996, regarding the designation of Cooper Union Trail as hiking only, neglected to address a small portion of the Trail which is available for bicycle use. It is undisputed that in order for bicyclists to access the Crossover Trail from Morris Avenue, a portion of the Cooper Union Trail must be open to bicyclists. The Department represented in its responsive pleadings that it intended to reinspect this area and correct any signs, as necessary, in order to minimize bicyclists using the Cooper Union Trail.[3]

---

[3] The supplemental affidavit of T. Mark Pitchell, dated May 16, 2000, states "the Department has corrected the trail use sign at the junction of the Cooper

## III.

### THE COMPLAINT SHOULD BE DISMISSED

 The Department asserts that the complaint should be dismissed for the failure to state a claim upon which relief can be granted. On a R. 4:6–2(e) motion to dismiss, the question for the court is "[w]hether the alleged facts 'suggest' a cause of action." *Craig v. Suburban Cablevision, Inc.,* 140 *N.J.* 623, 626, 660 *A.*2d 505 (1995) (citing *Velantzas v. Colgate–Palmolive Co.,* 109 *N.J.* 189, 192, 536 *A.*2d 237 (1988)). In deciding this question, "[p]laintiffs are entitled to every reasonable inference in their favor. A reviewing court must search[ ] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim...." *Ibid.* (quoting *Printing Mart–Morristown v. Sharp Electronics Corp.,* 116 *N.J.* 739, 746, 563 *A.*2d 31 (1989) (internal quotations and citations omitted)).

The plaintiff, Robert W. Moss, is seeking relief in the nature of mandamus to force defendants, representatives of the DEP "to correct the trail use sign at the junction of Cooper Union trail and Morris Avene" and to "enforce trail use restrictions in Ringwood" by one of three methods: "instituting a volunteer bicycle patrol program..., posting a ranger... or closing Ringwood to bicycles..." The relief is most closely analogous to a mandamus—an order commanding the Department to enforce certain trail designations. For purposes of the R. 4:6–2(e) motion only, the Department admits all of the facts alleged in the complaint and asserts

---

Union Trail and Morris Avenue to conform with the November 12, 1996 letter from Richard F. Barker, Assistant Director of the Division of Parks and Forestry, stating that the Cooper Union Trail will be designated for hiking only...In order to minimize the bicyclists using the Cooper Union Trail, the Department has installed a sign: (i) on the south side of Morris Avenue indicating that the Cooper Union Trail running south from Morris Avenue is for hiking only; (ii) on the north side of Morris Avenue indicating that the Cooper Union Trail running north from Morris Avenue is for hiking, bicycling and horseback riding; and (iii) at the junction of the Cooper Union Trail and the Crossover Trail indicating that north from the junction of the Cooper Union Trail is designated for hiking only."

that those facts are palpably insufficient to support a claim upon which relief can be granted. For all of the reasons set forth herein, the court agrees.

 Mandamus is a proper remedy "(1) to compel specific action when the duty is ministerial and wholly free from doubt, and (2) to compel the exercise of discretion, but not in a specific manner." *Loigman v. Township Committee of Middletown*, 297 *N.J.Super.* 287, 299, 687 *A.2d* 1091 (App.Div.1997) (citations omitted). "[T]he cognizability of such a claim at the trial level is limited to where the inaction complained of is the nonperformance of mandated ministerial obligation." *Cohen v. Board of Trustees of the Univ. of Medicine & Dentistry of N.J.*, 240 *N.J.Super.* 188, 199, 572 *A.2d* 1191 (Ch.Div.1989) (citing *Equitable Life Mortgage v. New Jersey Div. of Taxation*, 151 *N.J.Super.* 232, 238, 376 *A.2d* 966 (App.Div.1977)). Thus, the question in this case is whether the alleged inaction that plaintiffs complain of amounts to the "nonperformance of a mandated ministerial obligation." A ministerial act or duty is defined as one which:

> [I]s absolutely certain and imperative, involving merely the execution of a set task, and the law which imposes it prescribes and defines the time, mode and occasion of its performance which such certainty that nothing remains for judgment or discretion.
>
> [*Cohen, supra,* 240 *N.J.Super.* at 199–200, 572 *A.2d* 1191 (citing *Ivy Hill Park Apartments v. NJ Property Liab. Ins. Guar. Ass'n,* 221 *N.J.Super.* 131, 140, 534 *A.2d* 35 (App.Div.1987) (citations omitted)).]

 Put simply, a mandamus is an order compelling *specific* action when the duty is *ministerial* and wholly free from doubt. Further, our Supreme Court has held that "[w]here there is an omission to do what the law clearly and unmistakably directs as an absolute duty, *mandamus* is an appropriate remedy." *Reid Dev. Corp. v. Parsippany–Troy Hills Township*, 10 *N.J.* 229, 237, 89 *A.2d* 667 (1952). Again, for purposes of a *R.* 4:6–2(e) motion to dismiss for failure to state a claim, the court must accept the facts alleged in plaintiffs' complaint as true, and must ask whether those facts, if proven, "suggest" a viable cause of action capable of

remedy. *Suburban Cablevision, supra,* 140 *N.J.* at 626, 660 *A.*2d 505.

Although in certain circumstances the power to issue mandamus authorizes the judicial branch to direct a State administrative agency to take actions, the actions which may be compelled are limited to those that are purely ministerial and involve no exercise of discretion. *Switz v. Township of Middletown,* 23 *N.J.* 580, 588–89, 130 *A.*2d 15 (1957). A determination of the resources to be devoted to enforcement and the manner of enforcement clearly involves an exercise of the Department's discretion. Consequently, an order directing such an outcome would violate the separation of powers created by Article 3, ¶ 1 of the New Jersey Constitution:

> The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution.

*See Ironbound Health Rights Advisory Comm'n v. Diamond Shamrock Chemical Co.,* 216 *N.J.Super.* 166, 175–76, 523 *A.*2d 250 (App.Div.1987) ("*I.H.R.A.C.*").

The restrictions on the use of bicycles in State parks are set forth in the Department's regulations at *N.J.A.C.* 7:2–2.25(a) which provide in pertinent part as follows:

> Bicycle riding is allowed and encouraged on all established State Park Service roads and routes or paths designated for such use, unless restricted by posted signs.

It is clear from this provision that bicycle riding is encouraged on all designated State park roads, routes or paths, the only limitation being the reservation in the Department of the right to restrict bicycle riding through non-designation or by posting signs on certain roads, routes or paths.

Whether the Department determines to prohibit bicycle riding on hiking trails (through the designation of hiking only trails) as allowed under *N.J.A.C.* 7:2–2.25(a) is left to the discretion of the Department. The rules do not attempt to control this determination in any way. Nor do the Act or the rules prescribe any

specific manner of enforcement. The decision of DEP as to whether or not to designate trails, post rangers, maintain a voluntary patrol system, post a ranger or issue citations is not ministerial, but rather involves the application of the DEP's discretion and expertise.

The inapplicability of the doctrine of mandamus where the discretionary authority of State administrative agencies is involved is explained by the Appellate Division in *New Jersey Optometric Ass'n v. Hillman–Kohan Eyeglasses, Inc.,* 160 *N.J.Super.* 81, 93–95, 388 *A.2d* 1299 (App.Div.1978). In that case, an association of optometrists brought suit against the Attorney General and the New Jersey Board of Optometrists to compel those entities to institute enforcement proceedings against companies who were allegedly violating certain optometry and antitrust laws. *Id.* at 94, 388 *A.2d* 1299. The association submitted to the Board various letters and documents concerning the manner in which the defendants were practicing optometry in support of its claim that defendants actions constituted violations of the Optometry Act. *Ibid.* Defendant Board and the Attorney General examined the documents and in exercising their discretionary function determined that the information did not establish violations of the act. *Ibid.* Because the decision as to whether to bring civil enforcement proceedings rests within the discretion of the Board and the Attorney General, the Appellate Division concluded that mandamus could not be used to force prosecution of the alleged violators. *Id.* at 94–95, 388 *A.2d* 1299.

In analyzing the application of mandamus, the Appellate Division relied on the rulings of the New Jersey Supreme Court in *Switz, supra,* 23 *N.J.* at 588–89, 130 *A.2d* 15, which describes mandamus as follows:

It is a coercive process that commands the performance of a specific ministerial act or duty, or compels the exercise of a discretionary function, but does not seek to interfere with or control the mode and manner of its exercise or to influence or direct a particular result. *Mandamus* lies to compel but not control the exercise of discretion. *Roberts v. Holsworth,* 10 *N.J.L.* 57[, 1828 *WL* 1362] (Sup.Ct.1828); *Benedict v. Howell,* 39 *N.J.L.* 221[, 1877 *WL* 7852] (Sup.Ct.1877).

The difference between a ministerial and a discretionary act is explained in the following manner:

Mandamus issues "to compel the performance, in a specified manner, of ministerial duties so plain in point of law and so clear in matter of fact that no element of discretion is left as to the precise mode of their performance, but as to all acts or duties depending upon a jurisdiction to decide questions of law or to ascertain matters of fact, on the part of the officer or body at whose hands the performance is required, *mandamus* will not lie."

[*Hillman–Kohan*, 160 *N.J.Super.* at 93–94, 388 *A.2d* 1299 (quoting *Switz, supra,* 23 *N.J.* at 588–89, 130 *A.2d* 15 (citations omitted)).]

Thus, *Hillman–Kohan* held that the decision whether or not to prosecute the optometrists was an exercise of discretion, which consequently was not a proper subject for mandamus. *Id.* at 94, 388 *A.2d* 1299. Specifically, the determination whether to prosecute requires the agency to apply its discretion and judgment to the facts presented in support of the request for prosecution. Mandamus is not an available remedy if the duty to act is a discretionary one and the discretion has been exercised. *Ibid.* Absent a showing that there was a lack of good faith or other invidious reason for the action or inaction, mandamus cannot be invoked to force a State agency to prosecute. *Id.* at 95, 388 *A.2d* 1299. In the present case, plaintiff goes far beyond simply a request for prosecution in seeking, among other things, an order enjoining the Commissioner of DEP to close Ringwood to bicycles.

The limitation of the use of mandamus as a tool to compel the performance of ministerial duties is intended to protect the separation of powers created by Article 3, ¶ 1 of the New Jersey Constitution. *See I.H.R.A.C.,* 216 *N.J.Super.* at 175, 523 *A.2d* 250. In *I.H.R.A.C.,* a group of citizens sued the DEP pursuant to the Environmental Rights Act, *N.J.S.A.* 2A:35A–1 *et seq.,* in order to compel the DEP to institute action to control and remediate dioxin pollution. Although the DEP had already taken some steps to control the danger presented by dioxin discharges, the plaintiffs contended that the Department had a ministerial duty to take additional action pursuant to an Executive Order issued by the Governor, which directed the Commissioner to take action to protect the public health and safety. *Id.* at 176, 523 *A.2d* 250.

Although the court rendered its decision in the context of the Environmental Rights Act, the *I.H.R.A.C.* decision is relevant to the plaintiff's claims for injunctive relief here because the court's interpretation of that statute relied in part on traditional principles of mandamus. The court held that the Environmental Rights Act does not create a private right to bring an action to compel the DEP to institute enforcement. At the same time, however, it stated that even if the Environmental Rights Act did create such a right, it "...would be limited to the common law remedy of mandamus—the right to compel the State to perform a required nondiscretionary function." *Id.* at 174, 523 A.2d 250. Noting that the Commissioner had not ignored the Executive Order, but in fact had taken some action to enforce it, the court found that the degree and manner in which the order would be enforced was a matter for the Department's discretion, and therefore was not a proper subject for mandamus. *Id.* at 175–177, 523 A.2d 250.

As the *I.H.R.A.C.* decision points out, a citizens' suit to control an agency's exercise of discretion would violate the doctrine of separation of powers among the various branches of government, created by Article 3, ¶ 1 of the New Jersey Constitution. This doctrine "is aimed at preventing one branch of government from claiming power reserved to another and at avoiding the exercise of inordinate power by a single arm of government." *Id.* at 175, 523 A.2d 250 (citing *Mount Laurel Township v. Department of the Public Advocate*, 83 N.J. 522, 416 A.2d 886 (1980).) Although recognizing that occasionally the line separating the functions of the various branches of government can become blurred, the Appellate Division found that "it is nevertheless clear that a judicial order compelling the executive to take discretionary action would violate the separation of powers." *Id.* at 176, 523 A.2d 250. Thus, although the Executive Order did direct action by the Commissioner, the nature and extent of the action was a question for the discretion of the Commissioner. *Ibid.*

The official action sought to be compelled by plaintiff is not ministerial. The Department's decision to restrict and the man-

ner of restricting bicycles from hiking trails considered in light of the Department's obligations under the State Park and Forestry Resources Act is not so clear and unmistakable as to be without doubt as to the mode and manner of its performance. The statutory grant of power to the Commissioner in *N.J.S.A.* 13:1I–5(a) to provide recreational activities and programs within the State parks for the benefit of the State's citizens cannot be exercised in a vacuum independent of other valid considerations involved in the effective overall performance of defendants' duties for the benefit of the public's use and enjoyment of the State parks. The letter from Richard Barker to the NYNJTC dated November 12, 1996 in which the State Park Service designates certain trails in Ringwood State Park for multiple use and hiking offers a clear explanation of the discretion and judgment involved in exercising the duty to designate and restrict trail use within State parks. The letter provides in pertinent part:

> It is recognized that these finalized State Park Service Trail use designations and the use recommendations of the NYNJTC are not in all cases consistent. The designations had to be made recognizing each trail's historical uses, our enforcement capabilities, and each trail's physical characteristics. Applying designations that would exclude long term existing uses would lead to immediate conflicts, difficult enforcement actions, and significant numbers of disgruntled or combative trail users.

The decision of DEP as to whether or not to designate trails, post rangers, maintain a voluntary patrol system or issue citations is not ministerial, but rather involves the application of the DEP's discretion and expertise. In comparison, there are numerous cases in which the courts of this State have held State agency action and inaction to be ministerial and therefore cognizable before the Law Division. For instance, in *Colon v. Tedesco*, 125 *N.J.Super.* 446, 452, 311 *A.*2d 393 (Law Div.1973), the court found that the Department of Labor and Industry's refusal to institute proceedings was not deemed discretionary where statute was cast in mandatory, well-defined terms. In *Colon*, plaintiffs charged certain individuals in control of a migrant labor camp with permitting unsanitary conditions in their operation so that it constitutes a public nuisance. *Id.* at 447, 311 *A.*2d 393. The relief sought was

a judgment ordering defendants to initiate proceedings against the owning and operating individuals pursuant to specific statutes to declare the camp to be a public nuisance. *Ibid.* There, the statutes which plaintiffs cited in their complaint provided that the Department of Labor and Industry, and Attorney General, had certain mandated duties which entailed specifically, initiating action against camps who failed to comply with those statutes. *Id.* at 397, 311 *A.2d* 393. *See also Bruder v. Teachers' Pension & Annuity Fund,* 27 *N.J.* 266, 277, 142 *A.2d* 225 (1958); *De Nike v. Board of Trustees of State Employees' Retirement System,* 62 *N.J.Super.* 280, 162 *A.2d* 891 (App.Div.1960); *Passaic v. Kingsley,* 47 *N.J.Super.* 265, 270, 135 *A.2d* 877 (App.Div.1957).

■ The performance of a ministerial duty involves the execution of a specific, mandatory and well-defined task. As already discussed, the plaintiff has not alleged a specific, definable and mandatory duty capable of enforcement, and from which specific statutory mandates any such duty emanates. Because there is no ministerial duty capable of execution, this court is without the jurisdiction to adjudicate plaintiffs' claims. The facts set forth in plaintiff's complaint and exhibits clearly establish that the Department has exercised its discretion in designating hiking only trails and determining an appropriate means of enforcing the prohibition of bicycling on those trails. The Department has elected to enforce the prohibition through a passive system of trail use signs, trail head signs, trail use pamphlets, and parking lot signs specifying permitted uses. The Department acknowledges that plaintiff and the NYNJTC have significantly influenced the trail use signing system. However, it is the responsibility of the Department to determine an appropriate trail signing system and enforcement strategy. Once the Department has determined how to execute these discretionary duties, mandamus is not available to allow plaintiff to direct the manner in which the duties are exercised or to influence a particular result. Accordingly, this matter should be dismissed for failure to state a claim upon which relief can be granted.

## *IV.*

## *TRANSFER TO THE APPELLATE DIVISION*

Finally, the Department asserts that in the event the complaint is not dismissed or summary judgment is not granted, the matter should be transferred to the Appellate Division. To support this position, the Department submits that actions to review final or interlocutory decisions of state agencies or officers are to be brought in the Appellate Division, and only the Appellate Division. *R.* 2:2–3(a)(2); *R.* 2:2–4. *See Pascucci v. Vagott,* 71 *N.J.* 40, 52, 362 *A.*2d 566 (1976) (challenge to welfare regulations should be heard exclusively in Appellate Division, despite statute placing jurisdiction in trial court); *Haas v. New Jersey Pinelands Comm'n,* 227 *N.J.Super.* 313, 318, 547 *A.*2d 331 (Ch.Div.1988) (challenge to registration-permit regulations transferred to Appellate Division).

In appropriate cases, when the Law Division finds that it lacks subject matter jurisdiction over claims relating to the action or inaction of a State administrative agency or officer, the Law Division may transfer such action to the Appellate Division. Rule 2:2–3(a) provides that:

> Except as otherwise provided by *R.* 2:2–1(a)(3) (final judgments appealable directly to the Supreme Court), appeals may be taken to the Appellate Division as of right . (2) to review final decisions or actions of any state administrative agency or officer . . .

However, because this court finds that the plaintiff has failed to state a claim, there is no viable claim which may be transferred to the Appellate Division.