224 N.J. Super. 455 (1988)
540 A.2d 927
BI-COUNTY DEVELOPMENT CORPORATION, PLAINTIFF,
v.
MAYOR AND COUNCIL OF THE BOROUGH OF OAKLAND, ETC. DEFENDANTS.
Superior Court of New Jersey, Law Division, Bergen County/Mercer County (Mount Laurel II Litigation).
Decided February 29, 1988.
*457 Carl S. Bisgaier for plaintiff.
Brian M. Chewcaskie for defendant (Gittleman, Muhlstock & Meyers, attorneys).
SKILLMAN, J.S.C.
This is a Mount Laurel case. See So. Burlington Cty. N.A.A.C.P. v. Mount Laurel Tp., 92 N.J. 158 (1983). On June 30, 1987, a scheduling order was entered which directed defendant, Borough of Oakland, to notify this court whether it intended to file a fair share housing plan with the Council on Affordable Housing (council) and move for a transfer to the council. The order further provided that in the event Oakland determined not to proceed before the council, it should advise the court
whether defendants will dispute the Council's fair share determination for the Borough and, if so, giving a brief outline as to the fair share issue as perceived by defendants including particular aspects of the Council's methodology or numbers generated which are in dispute, being as detailed as the defendants are then able; and, further, if not, stating whether defendants claim full or partial compliance, identifying any zoning which purportedly achieves such compliance.
In response to this order, counsel for Oakland advised the court that it intended to litigate the matter rather than moving for a transfer to the council and that it would accept the council's fair share methodology, "with the exception of the provisions of the reallocated housing formula utilized by the Council on Affordable Housing for region 1 as it applies to Oakland's fair *458 share obligation." The parties subsequently agreed by consent order entered on December 30, 1987 to submit the issue of Oakland's fair share obligation for determination on the basis of the reports, resumes and depositions of their respective experts. These documents comprise the entire record before the court.
Pursuant to the Fair Housing Act, N.J.S.A. 52:27D-301 et seq., the council has adopted regulations which prescribe the method for calculating a municipality's fair share obligation. See N.J.A.C. 5:92-2.1 to -8.6. On May 21, 1986 the council issued a document entitled "Municipal Present, Prospective and Pre-Credited Need," which indicates the fair share obligation of each municipality in the State under the methodology set forth in the council's regulations. According to this document, Oakland's fair share obligation is 345 units of low and moderate income housing.
Plaintiff's experts urge this court to follow the fair share methodology adopted by the council, without modification. Oakland's expert, Malcolm Kasler, also urges this court to follow the council's fair share methodology, but with one major modification. Kasler urges that the part of Oakland's fair share consisting of reallocated present need should be phased in over three six-year periods. He contends that a requirement that the entire reallocated present need be satisfied over the next six years would impose an excessive obligation on Oakland and other municipalities in Bergen County.
I conclude that trial courts hearing Mount Laurel cases which have not been transferred to the council should follow the council's fair share methodology, unless that methodology is shown to be arbitrary or capricious. When the Legislature enacted the Fair Housing Act, it envisioned that the council, rather than the courts, would assume primary responsibility for enforcement of the Mount Laurel obligations of New Jersey municipalities. N.J.S.A. 52:27D-302(c) declares that the interests of all citizens "would be best served by a comprehensive *459 planning and implementation response to" the Mount Laurel obligation. N.J.S.A. 52:27D-302(d) declares that the "essential ingredients" of such a "comprehensive planning and implementation response" include "the establishment of reasonable fair share housing guidelines and standards." Accordingly, the council has been assigned the responsibility to "[e]stimate the present and prospective need for low and moderate income housing at the State and regional levels," N.J.S.A. 52:27D-307(b), and to "[a]dopt criteria and guidelines for ... [m]unicipal determination of its present and prospective fair share of the housing need in a given region," N.J.S.A. 52:27D-307(c)(1). The act also contains a variety of inducements for municipalities to submit fair share plans in accordance with the council's criteria and guidelines. See, e.g., N.J.S.A. 52:27D-312, -317, -320, -321.
In Hills Development Co. v. Bernards Tp., 103 N.J. 1 (1986), the Supreme Court described the primary responsibility of the council in determining the extent of municipal fair share obligations as follows:
... The Council is charged by law with that responsibility, imparting to it the legitimacy and presumed expertise that derives from selection by the Governor and confirmation by the Senate, in accordance with the will of the Legislature. Instead of varying and potentially inconsistent definitions of total need, regions, regional need, and fair share that can result from the case-by-case determinations of courts involved in isolated litigation, an overall plan for the entire state is envisioned, with definitions and standards that will have the kind of consistency that can result only when full responsibility and power are given to a single entity. [Id. at 22]
The Court also made it clear that the trial courts should conform, wherever possible, with the council's determinations:
... While the Legislature has left a continuing role under the Act for the judiciary in Mount Laurel matters, any such proceedings before a court should conform wherever possible to the decisions, criteria, and guidelines of the Council. We do not believe the Legislature wanted lower income housing opportunities to develop in two different directions at the same time, contrary to sound comprehensive planning. [Id. at 63]
The council discharged its obligation to adopt criteria and guidelines for determining municipal fair shares by adopting N.J.A.C. 5:92-2.1 to -8.6. These administrative regulations *460 are entitled to a presumption of validity and will be set aside only by a showing that they are arbitrary or capricious. Bergen Pines Hospital v. Dept. of Human Services, 96 N.J. 456, 477 (1984). Oakland has failed to make such a showing in this case.[1]
Oakland argues that under N.J.A.C. 5:92-5.4, 37.4% of all the reallocated present need in the State is reallocated to Bergen County, that this reallocation is excessive, and that the only way Oakland and other Bergen County municipalities can be relieved of this excessive burden is by permitting them to satisfy their reallocated present need over 18 rather than 6 years. However, plaintiff's expert, Alan Mallach has convincingly demonstrated that the overall Mount Laurel obligations of Bergen County municipalities are not disproportionate with those of municipalities in other parts of the State. Although the reallocated present need obligations of Bergen County municipalities are relatively high, these obligations are offset by the relatively low prospective need obligations of these municipalities. Indeed, the total "precredited" need allocated to Bergen County municipalities is 5.7% of the existing occupied housing units in the county, which is less than the statewide average.[2] Therefore, I conclude that Oakland has failed to establish that the council's regulations for calculating municipal fair share obligations impose an unfair burden upon Oakland.
*461 Oakland notes that the adjustment in the council's methodology which it seeks is the same as a part of the consensus methodology generally followed by the Mount Laurel judges in determining municipal fair share obligations prior to enactment of the Fair Housing Act. However, the Mount Laurel judges accepted the part of the consensus methodology which permitted reallocated present need to be satisfied over 18 years with hesitation, based on the opinion of the experts who devised the methodology that the total of reallocated present need combined with the total of prospective need could not be satisfied within six years. See AMG Realty Co. v. Warren Tp., 207 N.J. Super. 388, 425 (Law Div. 1984).
I find nothing arbitrary or capricious in the council's determination not to permit reallocated present need to be phased in over 18 years. As explained in detail in Mallach's and Hudak's expert reports, the council's fair share methodology generates reallocated present need and prospective need obligations which are substantially smaller than those generated under the consensus methodology. Furthermore, the council's methodology allows credits and adjustments in a municipality's fair share obligation which are not recognized under the consensus methodology. The result is that the total Mount Laurel obligations of New Jersey municipalities under the council's methodology are substantially smaller than under the consensus methodology, even though the latter methodology only includes one-third of reallocated present need in its calculations. Thus, Oakland's fair share obligation under the consensus methodology would be 462 units of lower income housing whereas its obligation under the council's methodology is 345 units. Therefore, the council could reasonably have concluded that the essential rationale for delaying satisfaction of reallocated present need under the consensus methodology  the difficulty of meeting that obligation over a six year period  is not applicable to the smaller Mount Laurel obligations generated under its methodology.
*462 Accordingly, I find no basis for departing from use of the council's methodology in calculating Oakland's fair share obligation.[3]
NOTES
[1] The Appellate Division has exclusive jurisdiction under R. 2:2-3(a)(2) to review the validity of a regulation adopted by a state administrative agency. Pascucci v. Vagott, 71 N.J. 40, 52 (1976). Therefore, this court would not have the authority to invalidate the council's regulations, even if it found them to be arbitrary or capricious either on their face or as applied to Oakland. Rather, this court's authority would be limited to declining to follow the state administrative regulations in cases which have not been transferred to the council.
[2] I note that the precredited need as a percentage of housing stock of Atlantic County is 11.1%, which is nearly double that of Bergen County. Other counties also have substantially larger percentages of precredit need compared to existing housing stock; i.e., Cape May (10.9%), Monmouth (8.3%), Hudson (7.3%) and Ocean (7.2%).
[3] Oakland also urges that both its reallocated present need and prospective need obligations should be lower than those set by the council, because the percentage of growth area in Oakland, one of the factors which determines the magnitude of both obligations, is less than assumed by the council. However, the papers presented to the court are insufficient to permit a determination of this issue. Therefore, the parties have been requested to supplement their prior submissions regarding this issue.

In addition, by letter dated February 4, 1988, Oakland claimed that it is entitled to a credit against its fair share obligation for ten units of lower income housing which have been rehabilitated since 1980. However, this claim will be considered only upon a formal application to the court supported by the same data required by the council.