813 A.2d 581 (2003)
356 N.J. Super. 500
MOUNT OLIVE COMPLEX, a New Jersey Partnership, Plaintiff-Appellant and Cross-Respondent, and
Mount Olive Villages Sewer Company, Inc., a New Jersey Corporation; and Mount Olive Villages Water Company, Inc., a New Jersey Corporation, Plaintiffs,
v.
TOWNSHIP OF MOUNT OLIVE, a Municipal Corporation; and Mayor and Township Council of the Township of Mount Olive, Defendants-Respondents and Cross-Appellants, and
Mount Olive Planning Board, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued February 26, 2001.
Decided June 4, 2001.
Remanded September 5, 2002.
Resubmitted December 2, 2002.
Decided January 10, 2003.
Lasser Hochman, Roseland, for appellant/cross-respondent (Bruce H. Snyder, on the supplemental brief).
Dorsey and Fisher, Boonton, for respondents/cross-appellants (John H. Dorsey, Boonton, John E. Horan, Peterson and Kathryn Roettger, Florham Park, on the supplemental brief).
*582 Before Judges HAVEY, CUFF and LISA.
The opinion of the court was delivered by HAVEY, P.J.A.D.
In this Mount Laurel[1] litigation, the Supreme Court granted certification of the judgment entered by us, see Mount Olive Complex v. Township of Mount Olive, 340 N.J.Super. 511, 774 A.2d 704 (App.Div. 2001), and remanded for reconsideration in light of Toll Bros., Inc. v. Township of West Windsor, 173 N.J. 502, 803 A.2d 53 (2002); Bi-County Dev. of Clinton, Inc. v. Borough of High Bridge, 174 N.J. 301, 805 A.2d 433 (2002); and Fair Share Hous. Ctr., Inc. v. Township of Cherry Hill, 173 N.J. 393, 802 A.2d 512 (2002). The parties have submitted supplemental briefs.

I
We first address the Supreme Court's holding in Toll Bros., Inc. In that case, West Windsor had been the subject of a 1984 Mount Laurel action resulting in a judgment fixing its fair share at 1,619 affordable housing units. Toll Bros., Inc., supra, 173 N.J. at 514-15, 803 A.2d 53. To meet this obligation, West Windsor adopted a compliance plan that included eleven sites for inclusionary zoning. Id. at 515, 803 A.2d 53. Toll Brothers' 293-acre tract (Site 6) was part of the plan, which called for the construction of 527 affordable units on the site. The compliance plan was memorialized in a Judgment of Compliance and Repose entered in October 1985. Id. at 516, 803 A.2d 53.
In May 1993, Toll Brothers instituted exclusionary zoning litigation against West Windsor demanding a builder's remedy. Id. at 517, 803 A.2d 53. West Windsor's period of repose under the 1985 judgment had expired, and the Township had not applied for interim certification. Ibid. From 1985 to the date Toll Brothers instituted its action, only two of the sites identified by the judgment had been developed, yielding thirty-seven "for-sale" condominium units and 102 rental units. During the same time, a "`massive amount'" of "`high-priced'" single-family, detached homes were built in non-inclusionary zones within the Township. Ibid. (quoting Toll Bros., Inc. v. Township of West Windsor, 303 N.J.Super. 518, 526, 553, 697 A.2d 201 (Law Div.1996), aff'd o.b., 334 N.J.Super. 109, 756 A.2d 1074 (App.Div.2000), aff'd, 173 N.J. 502, 803 A.2d 53 (2002)). Housing in this category increased from 2,907 to 6,115 units.
During the trial that concluded on March 29, 1995, Judge Carchman, then a trial judge, concluded that, based on the Council on Affordable Housing's (COAH) methodology, West Windsor's "present" fair-share housing obligation was 929 affordable housing units. Toll Bros., Inc., supra, 173 N.J. at 519, 803 A.2d 53. Because defendant had met 241 units of its 929-unit obligation, the Township's fair share was reduced to 688 units. Id. at 520, 803 A.2d 53. The sole means of meeting this balance "`was the inclusionary zoning of nine remaining sites.'" Id. at 520, 803 A.2d 53 (quoting Toll Bros., Inc., supra, 303 N.J.Super. at 532, 697 A.2d 201).
In determining that Toll Brothers was entitled to a builder's remedy, Judge Carchman undertook a fact-specific analysis of each of the inclusionary zoning sites *583 in deciding whether West Windsor had provided a realistic opportunity for development of its present 688-unit affordable housing obligation. Toll Bros., Inc. supra, 173 N.J. at 521-29, 803 A.2d 53. He determined that the maximum potential affordable house yield was 505 units, 183 short of West Windsor's obligation. Id. at 529, 803 A.2d 53.
The judge determined that West Windsor's sewer construction and financing policies were an impediment to the construction of affordable units. Id. at 533-34, 803 A.2d 53. In addition, the judge held that market demand was a relevant factor in determining whether West Windsor's zoning provided a realistic opportunity for the construction of affordable housing units. Id. at 531, 803 A.2d 53. Nearly all of the inclusionary zoning permitted by West Windsor required the construction of multi-family units and "unconventional zero lot-line single family detached housing." Id. at 530, 803 A.2d 53. Judge Carchman concluded that, based on the evidence, since there was minimal demand in the Township for multi-family units, it was unrealistic to assure that a majority of the sites would be developed for such units. Id. at 533, 803 A.2d 53.
In affirming the trial judge's determination that Toll Brothers was entitled to a builder's remedy, the Supreme Court accepted his factual finding that West Windsor's sewer policy was an impediment to the construction of affordable housing units. Id. at 558, 803 A.2d 53. The Court also held that "the trial court properly considered market demand in its analysis." Id. at 554, 803 A.2d 53. Noting that the nine sites were zoned almost exclusively for the construction of multi-family units, the Court observed that the Township "has not adequately explained why it continues to emphasize multi-family housing units, for which the demand is so low, when the market for detached, single-family units is so high." Id. at 555, 803 A.2d 53.
The Court summarily rejected West Windsor's argument that Toll Brothers was not entitled to a builder's remedy, concluding that the trial judge, and the Appellate Division in an unreported decision "properly held that Toll Brothers satisfied the Mount Laurel II requirements for the grant of a builder's remedy." Id. at 560, 803 A.2d 53. Specifically, it determined that Toll Brothers had not acted in bad faith and had "succeeded at trial," that is, it "served as the catalyst for the change and ... successfully demonstrated West Windsor's non-compliance with its constitutional obligation." Ibid.
Finally, the Court addressed and rejected arguments raised by amici urging it to either curtail or eliminate the builder's remedy, id. at 561, 803 A.2d 53, concluding:
If municipalities believe, as the League of Municipalities contends, that the builder's remedy has become a developer's weapon, it is the municipalities that possess the shield of COAH-afforded protection to ward off builder's remedy litigation. Until practically all municipalities with a significant Mount Laurel obligation use the COAH process, however, the builder's remedy remains a necessary mechanism for the enforcement of constitutional values. Experience demonstrates that absent adequate enforcement, the Mount Laurel doctrine can deliver little more than a vague and hollow promise that a reasonable opportunity for the development of affordable housing will be provided. This case demonstrates that unfortunate fact.
[Id. at 566, 803 A.2d 53.]

*584 II
In its supplemental brief submitted to us after remand, plaintiff has not addressed the relevancy of the Court's fact-specific analysis in Toll Bros., Inc., supra, 173 N.J. 502, 803 A.2d 53, and its unambiguous finding that West Windsor had not complied with its fair-share obligation. Rather, plaintiffs central argument is predicated on the undisputed fact that, in March 1997, when it filed its Mount Laurel action against the Township demanding a builder's remedy, the Township had not yet petitioned COAH for substantive certification. Plaintiff argues that "[t]he conclusion here is inescapable that it was only due to plaintiff's efforts, and the litigation commenced by plaintiff, that the Township at long last sought to comply with its Mount Laurel obligations by adopting a Housing Element and Fair Share Plan, and ultimately obtaining substantive certification from COAH." In support of the argument plaintiff cites the Court's admonition in Toll Bros. that "it is the municipalities that possess the shield of COAHafforded protection to ward off builder's remedy litigation." Id. at 566-67, 803 A.2d 53.
Simply put, the builder's remedy "is a device that rewards a plaintiff seeking to construct lower income housing for success in bringing about ordinance compliance through litigation." Allan-Deane Corp. v. Township of Bedminster, 205 N.J.Super. 87, 138, 500 A.2d 49 (Law Div. 1985) (emphasis added). In Mount Laurel II, supra, 92 N.J. at 218, 456 A.2d 390, the Court held that builder's remedies "will be afforded to plaintiffs in Mount Laurel litigation where appropriate, on a case-bycase basis." The Court added:
Where the plaintiff has acted in good faith, attempted to obtain relief without litigation, and thereafter vindicates the constitutional obligation in Mount Laurel-type litigation, ordinarily a builder's remedy will be granted, provided that the proposed project includes an appropriate portion of low and moderate income housing, and provided further that it is located and designed in accordance with sound zoning and planning concepts, including its environmental impact.
[Ibid.]
Later in the opinion, the Court held that: where a developer succeeds in Mount Laurel litigation and proposes a project providing a substantial amount of lower income housing, a builder's remedy should be granted unless the municipality establishes that because of environmental or other substantial planning concerns, the plaintiffs proposed project is clearly contrary to sound land use planning.
[Id. at 279-80, 456 A.2d 390 (emphasis added; footnote omitted).]
Applying the builder's remedy test articulated by the Court in Mount Laurel II, we decline to disturb our prior affirmance of the trial court's denial of a builder's remedy in this case. We need not repeat here the extensive procedural history and statement of facts set forth in our prior opinion. See Mount Olive Complex, supra, 340 N.J.Super. at 518-25, 774 A.2d 704. We underscore only those parts necessary for the purpose of distinguishing this case from Toll Bros., Inc., and to iterate our prior determination that plaintiff did not "succeed" in this Mount Laurel litigation.
Plaintiff had constructed 833 mixed residential units in Section I of a Planned Unit Development (PUD) approved by the Township in the early 1970s. Mount Olive Complex, supra, 340 N.J.Super. at 517, 774 A.2d 704. During the 1970's, the Public Advocate and others instituted an exclusionary *585 zoning action against the Township. Id. at 520, 774 A.2d 704. Plaintiff was not a named party in that litigation. Ibid. The case was settled, and the settlement was incorporated into a Judgment of Compliance dated May 14, 1985. The judgment provided that:
the total low and moderate income fair share housing obligation for Mt. Olive Township is 500 units of housing, 250 of which shall be affordable to persons of low income and 250 of which shall be affordable to persons of moderate income.
[Emphasis added.]
Despite this unambiguous declaration that the Township's fair share was "500 units of housing," the Township, in order to "resolve this dispute amicably" to ensure that there is no question of "full and adequate compliance with Mt. Laurel II," agreed to provide forty moderate-income units as part of a 400-unit apartment complex to be constructed by plaintiff in Section II of its PUD. For this reason, the trial judge in part denied a builder's remedy to plaintiff because it was not a "major player" in the 1985 settlement. Id. at 524, 774 A.2d 704. Plaintiff, of course, takes issue with that factual determination. We agree that it cannot be said with any certainty whether or not the 1985 settlement would have been reached without the contribution of the forty moderate-income units. It is at least arguable, however, that based on the terms of the settlement itself, Mount Olive had achieved its fairshare obligation without plaintiff's participation.
In contrast, Toll Brothers' 293-acre tract was a substantial component of West Windsor's compliance plan incorporated into the 1985 Judgment of Repose. 527 affordable housing units were initially earmarked for Toll Brothers' site, approximately one-third of the total of 1,619 units agreed upon by West Windsor as representing its fair share obligation. Further, in accordance with the Judgment of Compliance, Toll Brothers' site was rezoned for inclusionary zoning. In this case, since plaintiff's property was not identified as one of the sites to provide the 500 affordable housing units representing the Township's fair share, the Township was not required to, and in fact did not, rezone plaintiff's property for inclusionary development.
Since 1972, when plaintiff obtained its approval to construct Section I of its PUD, it never applied for approval of subsequent sections under its preliminary approval. By 1979, the Township had repealed the PUD ordinance and rezoned plaintiff's property R-3, permitting three single-family residential units per acre. Plaintiff did not file an action challenging the repeal.
In 1987, two years after the 1985 Judgment of Repose was entered, the Township's fair share was revised by COAH from 500 to 227 units. Id. at 521, 774 A.2d 704. There was considerable dispute during trial concerning whether the Township acted in good faith during the period 1987 through 1993, in satisfying its fairshare obligation. The Township has argued that it attempted to comply in good faith. Plaintiff argued to the contrary. However, plaintiff conceded in its original appellate brief that, as of August 1991, at least "theoretically" the Township had provided for 126 low-income units with respect to the Chester and Van Dalen sites, and sixty units as to the abutting Peace Project, leaving a forty-one unit shortfall.[2] Significantly, however, neither plaintiff, nor the owners of the sites designated under the 1985 judgment as affordable *586 unit sites, filed Mount Laurel actions demanding a builder's remedy.
After COAH reduced the Township's fair share to 227 units in 1987, plaintiff and Township representatives met to negotiate various aspects of plaintiffs PUD development. Plaintiff asked the Township to consider changing the zone on property owned by it, known as the YMCA property, from R-1 to R-3, permitting construction of 411 homes, rather than retaining the property, as the parties had agreed, for drainage purposes. Id. at 521, 774 A.2d 704. It also requested that the Township reinstate the PUD ordinance for the balance of the tract, and that the Township eliminate the requirement under the PUD approval that a portion of plaintiffs property be developed for commercial and industrial uses. Ibid. In October 1988, the Township terminated negotiations with plaintiff, and in November, it declared that plaintiffs PUD had expired based on the terms of the original approval. Ibid. Plaintiffs partners met to discuss the Township's actions. Ibid. One partner recommended that plaintiff institute suit against the Township. Significantly, a majority decided not to pursue litigation. Ibid.
In 1993, COAH reduced the Township's fair share from 227 to 181. During 1992 or 1993, the Township Planning Board undertook a comprehensive review of its land use ordinances. Id. at 522, 774 A.2d 704. It considered regulatory changes that had taken place concerning wetlands and stream protection under the jurisdiction of State agencies, as well as promulgation of the State Plan and Redevelopment Plan in 1992. Ibid.; and see N.J.S.A. 52:18A-199a. The State Plan placed almost all of the Township in "planning area 5," an environmentally-sensitive planning area. Ibid. The Planning Board's report stated that the "most important concept" in the State Plan, from the Township's perspective, was "to concentrate much of the new development in areas already served by sanitary sewer, potable water, and modern roads or areas scheduled for reasonable expansion of such infrastructure," areas which the State Plan designates as "centers." Id. at 522-23, 774 A.2d 704. The Board designated Budd Lake and certain other sections of the Township as qualifying "centers," but not plaintiffs property. Id. at 523, 774 A.2d 704. In 1995, the Township Committee implemented the reexamination report by zoning plaintiffs property R-A, permitting clustering on two-acre lots. Ibid.[3]
In October 1995, plaintiff filed suit seeking to validate its rights under the 1971 PUD approval. Ibid. It also sought to invalidate the R-A zone as contrary to sound zoning principles. Plaintiff did not raise a claim that the Township's actions or nonactions violated the 1985 Consent Judgment of Repose, or that it was entitled to a builder's remedy.
For the first time, in March 1997, plaintiff filed a Mount Laurel action demanding a builder's remedy. Ibid. However, nine months prior to this filing, the Township's Planning Board, on July 18, 1996, amended its master plan by adopting a housing element and fair-share plan. The document was intended to "provide[ ] a basis for petitioning COAH for substantive certification to cover the period 1987 through 1999." The plan sought credits against its precredited need of 181 units for an age-restricted development (Biding Peace), family rental units (Bartley Ridge), rental *587 bonuses and rehabilitation. It is unclear why the document was not submitted to COAH before plaintiff's Mount Laurel complaint was filed in March 1997. The Township states that it was because of a clerical error in the Township's administrative offices.
In any event, the Township petitioned COAH for substantive certification on April 11, 1997, but the agency would not accept jurisdiction while plaintiff's Mount Laurel action (filed one month earlier) was pending in the trial court. Mount Olive Complex, supra, 340 N.J.Super. at 523-24, 774 A.2d 704. In its resolution, COAH determined that the Township had met its precredited need of 182 units and had a "surplus" of nine units which "shall carry forward." Specifically, COAH gave a credit for: (1) sixty age-restricted rental units in Biding Peace, completed in 1993; (2) seventy-two affordable rental units in Bartley Ridge, an exclusionary development, approved in October 1995 and under construction; (3) rehabilitation units; and (4) rental units.
What is gleaned from this procedural history is that this regrettable "race to the finish line" was no doubt caused, at least in part, by the Township's lack of diligence in preparing and filing with COAH its housing element and fair-share plan in a timely fashion after COAH reduced its fair share to 181 units in 1993. However, the fact is, as we stated in our earlier opinion, id. at 526, 774 A.2d 704, plaintiff has not demonstrated that the Township's land-use regulations, in place at the time plaintiff brought its Mount Laurel litigation in March 1997, failed to provide the requisite realistic opportunity for satisfaction of the Township's fair-share obligation. It is undisputed that, based on the Planning Board's July 1996 housing element and fair-share plan, adopted prior to plaintiff's builder's remedy complaint, COAH ultimately determined that plaintiff's cumulative precredited need at the time plaintiff filed its action was "zero." Significantly, the credits given by COAH were for units actually constructed, under construction, or approved by final development plan by the Township prior to the date plaintiff instituted its builder's remedy action.
Consequently, plaintiff hardly "succeeded" at trial. Toll Bros., Inc., supra, 173 N.J. at 560, 803 A.2d 53. In Toll Bros., Inc., for example, the Court affirmed the grant of a builder's remedy because "it was Toll Brothers that served as the catalyst for change and that successfully demonstrated West Windsor's non-compliance with its constitutional obligation." Ibid. (emphasis added). The grant of the builder's remedy was founded in part on Toll Brothers' assertion that its success in proving non-compliance was evidenced by the fact that West Windsor had changed its zoning ordinances during the litigation in an effort to comply, and further that seventy percent of the fair-share plan ultimately approved by the trial judge was due to its lawsuit. Ibid. No such "noncompliance," "success" or "change" in the Township's ordinance as a result of plaintiff's law suit, has been demonstrated here.
Finally, we reiterate our previous rejection of plaintiff's argument that the Township was bound in perpetuity by the fairshare allocation under the 1985 Judgment of Compliance. As we stated:
A fair-share determination is subject to change; indeed, the 1985 judgment in this case fixes the Township's fair share only through the year 1990. Moreover, the FHA charges COAH with fixing a municipality's fair share. N.J.S.A. 52:27D-307c(1). See Hills Dev. Co. v. Bernards Township, 103 N.J. 1, 22, 510 A.2d 621 (1986). Courts hearing and deciding exclusionary zoning cases should follow COAH's fair-share methodology. *588 Id. at 63, 510 A.2d 621, and see Bi-County Dev. Corp. v. Mayor of Borough of Oakland, 224 N.J.Super. 455, 458-59, 540 A.2d 927 (Law Div.1988).
[Mount Olive Complex, supra, 340 N.J.Super. at 527-28, 774 A.2d 704.]
We also hold firm to our previous determination that the Township's revisions of its zoning ordinance subsequent to the 1985 Judgment of Compliance met the standard pronounced by us in Toll Bros., Inc. v. Township of West Windsor, 334 N.J.Super. 77, 98-100, 756 A.2d 1056 (App.Div. 2000), certif denied, 168 N.J. 295, 773 A.2d 1159 (2001) (Toll Bros. II); that is, to modify or terminate a Mount Laurel consent degree a municipality "`must establish that a significant change in facts or law warrants revision of the decree and the proposed modification is suitably tailored for the changed circumstances.'" Id. at 100, 756 A.2d 1056 (quoting Rufo v. Inmates of Suffolk Cty. Jail, 502 U.S. 367, 393, 112 S.Ct. 748, 765, 116 L.Ed.2d 867, 892 (1992)). For the reasons expressed in our prior opinion, we remain convinced that the Township met that burden and we do not read the Court's decision in Toll Bros., Inc. as requiring a different result.

III
We do not view the Court's opinions in Bi-County Dev. of Clinton, Inc., supra, 174 N.J. 301, 805 A.2d 433, or Fair Share Hous. Ctr., Inc., supra, 173 N.J. 393, 802 A.2d 512, as requiring modification of our prior order. In Bi-County Dev. of Clinton, Inc., the Court held that a court could not compel an adjoining municipality to provide sewer service to a housing development that would generate affordable housing fees, but would not itself contain any affordable housing. 174 N.J. at 326-28, 805 A.2d 433. Our case does not involve a claim that a municipality must cooperate with an adjoining town in which housing is being developed that will generate affordable housing fees. Fair Share Hous. Ctr., Inc., is a fact-sensitive case in which the Court held that a municipality, which had received an adjustment for lack of vacant developable land, could not exclude that land from its inventory of potential sites for affordable housing when the site in question became available for development. 173 N.J. at 415, 802 A.2d 512. No such issue is before us.

IV
Finally, citing Pheasant Bridge Corp. v. Township of Warren, 169 N.J. 282, 777 A.2d 334 (2001), cert. denied, ___ U.S. ___, 122 S.Ct. 1959, 152 L.Ed.2d 1020 (2002), plaintiff argues that we should revisit our determination upholding the Township's five-acre lot zoning as it applies to plaintiff's property. However, we are bound to comply with the clear mandate of the Supreme Court. See In re Application of Plainfield-Union Water Co., 14 N.J. 296, 303, 102 A.2d 1 (1954); Summit Trust Co. v. Baxt, 333 N.J.Super. 439, 448, 755 A.2d 1214 (App.Div.2000), certif. denied, 165 N.J. 678, 762 A.2d 658 (2000). The Supreme Court's remand clearly directs us to reconsider our opinion in light of the three Mount Laurel cases decided after the opinion was rendered; it does not direct that we reconsider the zoning issues decided by us in light of Pheasant Bridge Corp. In any event, the severe steep slopes, freshwater wetlands, flood plains, existence of a thirty-acre plus spray irrigation field on plaintiffs site, mandated DEP buffer areas and other environmental constraints found to exist in this case, see Mount Olive Complex, supra, 340 N.J.Super. at 535-37, 774 A.2d 704, together with the interplay and significance of the State Plan's designation of plaintiffs site as "environmentally sensitive," see id. at 540-46, 774 A.2d 704, clearly *589 distinguish this case from Pheasant Bridge Corp.
After reconsidering in accordance with the Court's remand order, we decline to disturb our prior opinion and order.
NOTES
[1] Southern Burlington Cty. N.A.A.C.P. v. Township of Mount Laurel, 67 N.J. 151, 336 A.2d 713, appeal dismissed and cert. denied, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975) (Mount Laurel I); Southern Burlington Cty. N.A.A.C.P. v. Township of Mount Laurel, 92 N.J. 158, 456 A.2d 390 (1983) (Mount Laurel II).
[2] The Chester and Van Dalen and Peace Project sites were designated sites for the construction of affordable housing units under the 1985 consent judgment.
[3] During the pendency of the trial court proceeding, the Township rezoned a substantial part of the Township, including plaintiff's property, containing wetlands and steep slopes to a density of one unit per five acres.