840 A.2d 885 (2004)
366 N.J. Super. 116
SOD FARM ASSOCIATES, et al., and Springco Development, LLC, Plaintiffs-Respondents,
v.
TOWNSHIP OF SPRINGFIELD and Planning Board of the Township of Springfield, Defendants-Respondents, and
New Jersey Council on Affordable Housing, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 14, 2003.
Decided January 28, 2004.
*886 George N. Cohen, Deputy Attorney General, argued the cause for appellant (Peter C. Harvey, Attorney General, attorney; Michael J. Haas, Assistant Attorney General, of counsel; Pamela E. Gellert, Deputy Attorney General, on the brief).
Dennis P. McInerney, Moorestown, argued the cause for respondent Township of Springfield and joined in the brief submitted by the Council on Affordable Housing.
Jeffrey Kantowitz, West Orange, argued the cause for respondent Sod Farm Associates (Goldberg, Mufson & Spar, attorneys; Mr. Kantowitz, of counsel and on the brief).
Henry L. Kent-Smith, Princeton, argued the cause for respondent SpringCo Development, LLC (Saul Ewing LLP, attorneys; Mr. Kent-Smith, of counsel and on the brief).
Before Judges PETRELLA, WEFING and COLLESTER.
*887 The opinion of the court was delivered by PETRELLA, P.J.A.D.
The Council on Affordable Housing (COAH or Council) has appealed, on leave granted, from an order of the Law Division entered in an action in lieu of prerogative writs challenging adoption of an affordable housing zoning ordinance. The Law Division asserted jurisdiction to determine whether Springfield Township had satisfied its Mt. Laurel[1] obligations by its affordable housing compliance plan, which was pending before COAH under the Fair Housing Act (FHA), N.J.S.A. 52:27D-301 et seq.,[2] and whether a builder's remedy should be given. As a respondent, Springfield joins in COAH's arguments on this appeal.
COAH and Springfield argue that the Law Division erred in refusing to dismiss claims asserted by the plaintiffs, Sod Farm Associates and SpringCo Development, LLC, regarding Springfield's claimed Mt. Laurel obligations because that issue remained under COAH's exclusive primary jurisdiction by virtue of Springfield's previously pending petition for substantive certification. For the reasons hereinafter stated, we reverse.
Springfield, a rural community with an area of approximately twenty-nine square miles in Burlington County, adopted a Mt. Laurel housing element plan on January 19, 1988, and petitioned for substantive certification on February 8, 1989.[3] On October 8, 1992, Springfield received substantive certification from COAH for its first round (1987-1993) obligation of 67 units of affordable housing. N.J.A.C. 5:92-1, et seq. Subsequently, Springfield's second round (1993-1999) obligation was calculated under N.J.A.C. 5:93-1, et seq. as 68 units of affordable housing, 15 units of rehabilitation housing and 53 units of new construction housing.
Springfield submitted its second round housing element and fair share plan to COAH on September 9, 1998, with a petition for substantive certification. No objections to that plan were received in the forty-five day comment period. COAH requested additional information from Springfield on September 10, 1999, and Springfield responded by submitting an amended housing element and fair share plan on December 23, 1999. Publication of a notice of the request for substantive certification was made on December 27, 1999. During the forty-five day comment period, Sod Farm Associates (Sod Farm), which owns and proposes to develop approximately 650 acres of land in Springfield, submitted the only objection. On January 24, 2000, Sod Farm brought a motion before COAH for an accelerated denial of Springfield's amended petition. Springfield filed a cross-motion to dismiss Sod Farm's motion. COAH requested Springfield to address certain deficiencies and on April 5, 2000, deferred decision until the statutorily required mediation under *888 N.J.S.A. 52:27D-315 took place later that month.
Springfield had excluded Sod Farm's site as a designated affordable housing location.[4] Springfield and Sod Farm commenced COAH mediation on April 14, 2000. Mediation was in effect until December 2000, when it was ended without a resolution. The mediation revealed that Springfield's plan requested 11 "accessory apartments," thus requiring a waiver of the 10 unit limit in N.J.A.C. 5:93-5.9(a), which was opposed by Sod Farm and denied by COAH. Sod Farm also unsuccessfully requested that COAH dismiss Springfield from its jurisdiction.
COAH instructed Sod Farm and Springfield to re-engage in mediation. The second round of mediation was to begin in October 2001, when Sod Farm withdrew from the process and again requested that COAH dismiss and remove Springfield from its jurisdiction. COAH allowed Springfield to resubmit its second amended housing element and fair share plan and re-petition to add one additional affordable housing unit to its fair share plan.
In October 2001, Springfield introduced ordinance 2001-7 to eliminate the Planned Residential Development (PRD) zone, previously designated as affordable housing, because it would not receive credit from the Council as it was then proposed. Preapproval of COAH was neither requested nor required. SpringCo Development, LLC (SpringCo), a contract purchaser of a 53.9 acre parcel in Springfield's first round PRD district, objected to COAH on November 1, 2001, because it claimed its land would no longer be included in Springfield's affordable housing package. SpringCo proposed to develop 215 units of housing, 43 of which were purportedly for affordable housing. Because COAH considered that Springfield had proposed "substantial" changes to its fair share plan, it required Springfield on November 5, 2001, to publish notice of its intent to amend within sixty days. See N.J.A.C. 5:91-7.5.
SpringCo had also filed an action in lieu of prerogative writs in the Law Division on November 9, 2001, challenging Ordinance 2001-7, as exclusionary zoning because it eliminated the PRD zone and allegedly made Springfield noncompliant with its 1992 certification. Ordinance 2001-7 was adopted by Springfield on November 13, 2001. Additionally, on that date SpringCo moved to dismiss Springfield from COAH's jurisdiction and joined Sod Farm's January 2000 motion to dismiss the 1999 petition. Sod Farm filed its first Mt. Laurel action in the Law Division on November 15, 2001, alleging exclusionary zoning by Springfield and noncompliance with zoning requirements. On December 28, 2001, Sod Farm filed a second action to challenge Ordinance 2001-7 as exclusionary.
On December 23, 2001, Springfield published a notice of its intent to amend its housing element and fair share plan and filed a new petition and amended plan with COAH on December 31, 2001. Sod Farm and SpringCo objected to this plan and on February 4, 2002 moved before COAH to dismiss the petition.
Plaintiffs' motions to dismiss the December 1999 petition were denied by COAH on March 6, 2002, on the basis that dismissal was not warranted, relying on the State's policy expressed in the FHA to resolve Mt. Laurel disputes through COAH's mediation and review procedures. The Council also recognized the difficulty in achieving a *889 fair share plan because Springfield is a rural community that desired to preserve its farmland. Motions to reconsider by Sod Farm and SpringCo were denied.
Sod Farm served COAH and Springfield with an amended complaint on May 24, 2002, which repeated the allegations of its first complaint. Again, Sod Farm sought a declaration that Springfield's zoning and development regulations were null and void as well as a builder's remedy. On June 5, 2002, COAH formally denied Sod Farm's and SpringCo's motions to dismiss Springfield's 2001 petition for reasons similar to its earlier ruling. On July 1, 2002, Sod Farm and SpringCo sought leave to appeal to this court from COAH's rulings. They also sought a writ of mandamus to compel COAH to release its third round methodology. We denied those applications by order dated August 22, 2002.
While this was occurring, Sod Farm sought to proceed on its complaints in lieu of prerogative writs for a declaration that Springfield's land use regulations were null and void, and for an order requiring COAH, which had been made a party to the suit under N.J.S.A. 52:27D-317, to release its third round methodology for housing.[5]
The lawsuits were consolidated in the Law Division on July 10, 2002. SpringCo served COAH with an amended complaint on July 25, 2002. It also sought to compel issuance by COAH of a third round methodology and numbers. COAH sought to dismiss all pending court actions and dismiss portions of the actions which asserted Mt. Laurel claims on August 22, 2002, on the ground of its exclusive, primary jurisdiction. See e.g., Hackensack v. Winner, 82 N.J. 1, 410 A.2d 1146 (1980). Each plaintiff cross-moved to declare the administrative process defunct.
Notwithstanding all of the procedural actions by plaintiffs, the motion judge in an October 23, 2002 oral opinion determined that it was COAH that had been "dragging its feet" because it had not scheduled a mediation proceeding. The judge essentially absolved Springfield from any culpability for delays, but relieved Sod Farm and SpringCo of the obligation to exhaust administrative remedies prior to proceeding with litigation. The judge held that Springfield's ordinance was noncompliant with Mt. Laurel, and invalid as exclusionary and unconstitutional. He appointed a special master to evaluate the suitability of plaintiffs' properties for Mt. Laurel housing. The judge also granted Sod Farm's and SpringCo's subsequent partial summary judgment motions for builder's remedies, in addition to granting their summary judgment motions challenging Ordinance 2001-7. The judge denied COAH's motion to dismiss and the motions for reconsideration filed by COAH and Springfield. We granted COAH's motion for leave to appeal.

I.
COAH and Springfield raise various arguments on this appeal. First, they argue that the motion judge's decision should be reversed because plaintiffs were required to exhaust administrative remedies before COAH prior to litigation.
The genesis of the affordable housing disputes was Southern Burlington County *890 N.A.A.C.P. v. Township of Mount Laurel, 67 N.J. 151, 174, 336 A.2d 713 (Mt. Laurel I), cert. denied, 423 U.S. 808, 96 S.Ct. 18, 46 L. Ed.2d 28 (1975), where the Court pronounced that
every such [undeveloped] municipality must, by its land use regulations, presumptively make realistically possible an appropriate variety and choice of housing. More specifically, presumptively it cannot foreclose the opportunity of the classes of people mentioned for low and moderate income housing and its regulations must affirmatively afford that opportunity, at least to the extent of the municipality's fair share of the present and prospective regional need therefore.
The Legislature's reaction to the subsequent Mt. Laurel II decision[6] was expressed in the FHA which created COAH as an alternative method of review to be used by municipalities for challenges, review of zoning regulations and for protection from future challenges. Toll Bros., Inc. v. Township of West Windsor, 173 N.J. 502, 513-514, 803 A.2d 53 (2002) (Toll Bros. III). A municipality is not required to file with COAH, but is subject to Mt. Laurel litigation if it chooses not to do so. Toll Bros., Inc. v. Township of West Windsor, 334 N.J.Super. 77, 92, 756 A.2d 1056 (App.Div.2000) (Toll Bros. II). Prior to the FHA, an available judicial remedy was the builder's remedy, which was court formulated to give private developers an incentive to initiate litigation.[7]Toll Bros. III, supra (173 N.J. at 541, 803 A.2d 53). This reward is afforded for bringing about ordinance compliance through the use of litigation. Municipalities that have obtained substantive certification of their plans are provided with a presumption of validity for ten years, which can only be overcome by clear and convincing evidence. Toll Bros. II, supra (334 N.J.Super. at 92, 756 A.2d 1056). Therefore, if a municipality so chooses to avail itself of COAH's regulations it is protected from the potential consequence of a builder's remedy.
However, if a municipality chooses to refrain from subjecting itself to COAH's jurisdiction, then COAH reviews the matter only by way of transfer from the court. Toll Bros. III, supra (173 N.J. at 513-514, 803 A.2d 53). COAH's only procedural recourse is mediation; therefore, if this fails, a transferred case must be sent back to the court that originally had jurisdiction for a determination. Ibid. See also Fair Share Housing Center, Inc. v. Township of Cherry Hill, 242 N.J.Super. 76, 81, 576 A.2d 24 (App.Div.1990). It is in this instance that a municipality is subject to builder's remedies. Ibid.
Once the municipality has subjected itself to COAH's jurisdiction by filing a housing element and fair share plan, the longstanding rule that administrative remedies must be exhausted prior to bringing the case to court is applicable. See N.J.S.A. 52:27D-309. See also Waldor v. Untermann, 10 N.J.Super. 188, 190-191, 76 A.2d 906 (App.Div.1950). Several sections of the FHA exemplify this rule.
*891 For instance, N.J.S.A. 52:27D-309b, which applies to Springfield's submission, states:
A municipality which does not notify the council of its participation within four months [of the effective date of the FHA] may do so at any time thereafter. In any exclusionary zoning litigation instituted against such a municipality, however, there shall be no exhaustion of administrative remedy requirements pursuant to section 16 of this act unless the municipality also files its fair share plan and housing element with the council prior to the institution of the litigation. (Emphasis added).
Additionally, exhaustion of administrative remedies is required prior to instituting court action where the action is initiated less than sixty days before enactment of the FHA or after its enactment. N.J.S.A. 52:27D-316b states:
b. Any person who institutes litigation less than 60 days before the effective date of this act or after the effective date of this act challenging a municipality's zoning ordinance with respect to the opportunity to provide for low or moderate income housing, shall file a notice to request review and mediation with the council pursuant to sections 14 and 15 of this act. [N.J.S.A. 52:27D-314 and 315.] In the event that the municipality adopts a resolution of participation within the period established in subsection a of section 9 of this act, [N.J.S.A. 52:27D-309a] the person shall exhaust the review and mediation process of the council before being entitled to a trial on his complaint.
We do not read Section 316 as limiting the requirement to exhaust administrative remedies to the situations in subsection 309a.[8] Clearly, the nature of COAH's legislatively mandated jurisdiction, the discretion and expertise involved, and the statements of legislative intent make waiver inappropriate where the Council is working with the municipality and reviewing its submission.[9]
The FHA does refer to instances where the exhaustion of remedies doctrine can be waived, but that does not mean that the courts must ignore the usual rules of deference to administrative expertise, the principal of exhaustion of administrative remedies, and the creation by the agency of a full record. For instance, section 318 provides:
If a municipality which has adopted a resolution of participation pursuant to section 9 of this act [N.J.S.A. 52:27D-309] fails to meet the deadline for submitting its housing element to the council prior to the institution of exclusionary zoning litigation, the obligation to exhaust administrative remedies contained in subsection b. of section 16 of this act *892 [N.J.S.A. 52:27D-316] automatically expires. The obligation also expires if the council rejects the municipality's request for substantive certification or conditions its certification upon changes which are not made within the period established in this act or within an extension of that period agreed to by the council and all litigants.
This automatic expiration of the statutory exhaustion of remedies requirement can rationally be read to apply to those municipalities who had initially complied with Section 309a at the earlier date, but does not automatically apply to municipalities who filed under Section 309b. Thus, if a municipality fails to meet the deadline to file a housing element prior to the institution of an exclusionary suit, the complaining party does not have to exhaust remedies. N.J.S.A. 52:27D-318. However, that did not occur here because Springfield essentially did meet its filing requirement under Section 309b and the delay was due substantially to COAH.
Similarly, exhaustion of administrative remedies is further limited in N.J.S.A. 52:27D-319, which states:
If the council has not completed its review and mediation process for a municipality within six months of receipt of a request by a party who has instituted litigation, the party may file a motion with a court of competent jurisdiction to be relieved of the duty to exhaust administrative remedies. In the case of review and mediation requests filed within nine months after this act takes effect, the six-month completion date shall not begin to run until nine months after this act takes effect.
This section provides the option of an application to "a court of competent jurisdiction," for relief from the exhaustion of remedies requirement. Like section 316, this section should not be interpreted to mean that courts ignore the usual doctrines of exhaustion of administrative remedies and deference to the expertise of administrative agencies charged with applying a statute.
Plaintiffs twice sought leave to appeal to the Appellate Division and were denied. Thus, they were clearly left to exhaust their administrative remedies before COAH and the Office of Administrative Law. What happened thereafter can be viewed as an attempted end run around the denials of leave to appeal.
COAH and Springfield argue that by a proper reading of Section 319 in conjunction with Section 316b, relief from exhaustion of administrative remedies is only expressly available under the FHA where the suit was transferred from a trial court, which occurs only where the municipality has chosen not to avail itself of COAH's regulations. The motion judge declined to adopt this argument. Rather, he believed that section 319 was clear and unambiguous and required that review and mediation in all situations, no matter how originated, and whatever the circumstances, must be completed within six months of initiation. Thus, he concluded that the six month period required under section 319 expired for Sod Farm on June 23, 2002 and early August 2002 for SpringCo.
We do not subscribe to his reading of the FHA. The statute is hardly clear and unambiguous and it is not clear that section 319 should be strictly applied. Such a reading is not only impractical, but unrealistic, particularly where competing property owners interpose objections and file numerous motions that can cause delay.
Here, the motion judge acknowledged in his October 23, 2002 ruling that Springfield was essentially not at fault. He attributed the delay to COAH. The trial judge was correct in attributing the cause of delay to COAH, however the judge failed to *893 address the impact plaintiffs had on the delay. Springfield's September 1998 filing of a housing element and fair share plan went through a series of amendments that were the subject of objections, numerous challenges and motions made by plaintiffs. Because plaintiffs disagreed with Springfield's choices, these challenges had the effect of delaying the process. COAH recognized that this ordinance substantially differed from the prior fair share plan because it eliminated the PRD Zone and required Springfield to publish its intent to amend the fair share plan. Thus, this exercise resulted in the delay that occurred in this case, caused essentially by the plaintiffs and COAH.
Springfield's efforts to comply with the FHA should not be penalized by delay in COAH's administrative process. The Legislature could hardly have intended such a result, particularly where a municipality has sought protection against builder's remedies. Therefore, even if the trial court had discretion, here it was mistakenly exercised.
The trial judge further determined that there was a violation of section 319 since the plaintiffs' second objection to Springfield's housing element and fair share plan had yet to be scheduled for mediation when the judge heard plaintiffs' application on October 23, 2002. However, this conclusion is in direct conflict with the FHA, its corollary code sections and legislative intent.
The obligations of COAH under the FHA are to determine "from time to time" housing regions, establish the need for affordable housing at the State and regional level, and adopt criteria and guidelines for municipalities to determine their fair share. N.J.S.A. 52:27D-307. COAH's second cycle fair share regulations, see N.J.A.C. 5:93-1 to 15.1, established municipal affordable housing obligations for the cumulative second cycle covering 1987-1999. See In re Petition for Substantive Certification, Tp. of Southampton, 338 N.J.Super. 103, 106 n. 1, 768 A.2d 233 (App.Div.), certif. denied, 169 N.J. 610, 782 A.2d 428 (2001). Those regulations have been extended until May 5, 2004. Ibid. (citing 31 N.J.R. 578(a); 31 N.J.R. 1479(a)). While COAH is considering the new regulations, municipalities within its jurisdiction whose substantive certifications have expired or are about to expire can protect themselves against builder's remedy lawsuits by seeking interim certification under N.J.A.C. 5:91-14. In general, those interim substantive certifications are valid until one year after the effective date of the adoption of COAH's third cycle regulations. N.J.A.C. 5:91-14.2(b); N.J.A.C. 5:91-14.3(a). Therefore, the fact that mediation had not been scheduled does not require automatic application of section 319.
Plaintiffs in this case are required to exhaust their administrative remedies before COAH. There are serious concerns involved in matters before COAH. For instance, the Supreme Court has recently emphasized that even in zoning cases environmental matters can be and should be taken into consideration. Toll Bros. III, supra (173 N.J. at 517, 803 A.2d 53). Certainly, this is also true in matters before COAH. The concerns of rural farming in Springfield are also involved here and deserve full consideration. See N.J.S.A. 52:27D-303. We are inclined to agree with COAH's argument, as the agency charged with interpretation and application of the FHA in the first instance, particularly when Sections 309, 316 and 319 of the FHA are considered in the context of the FHA's legislative history.
The FHA expresses the State's strong policy preference that exclusionary zoning disputes are to be resolved through the *894 Council's mediation and review process, and "not litigation." N.J.S.A. 52:27D-303. Thus, courts have recognized and deferred to COAH's exclusive primary jurisdiction over Mt. Laurel compliance issues. See Hills Dev. Co. v. Township of Bernards 103 N.J. 1, 510 A.2d 621 (1986). Moreover, the time for COAH to review a petition is qualified by N.J.S.A. 52:27D-314 which states:
Unless an objection to the substantive certification is filed with the council by any person with 45 days of the publication of the notice of the municipality's petition, the council shall review the petition and shall issue a substantive certification if it shall find that:
a. The municipality's fair share plan is consistent with the rules and criteria adopted by the council and not inconsistent with achievement of the low and moderate income housing needs of the region as adjusted pursuant to the council's criteria and guidelines adopted pursuant to subsection c. of section 7 of this act [N.J.S.A. 52:27D-307c]; and
b. The combination of the elimination of unnecessary housing cost-generating features from the municipal land use ordinances and regulations, and the affirmative measures in the housing element and implementation plan make the achievement of the municipality's fair share of low and moderate income housing realistically possible after allowing for the implementation of any regional contribution agreement approved by the council.
In conducting its review, the council may meet with the municipality and may deny the petition or condition its certification upon changes in the element or ordinances. Any denial or conditions for approval shall be in writing and shall set forth the reasons for the denial or conditions. If, within 60 days of the council's denial or conditional approval, the municipality refiles its petition with changes satisfactory to the council, the council shall issue a substantive certification.
Once substantive certification is granted, the municipality shall have 45 days in which to adopt its fair share housing ordinance approved by council.
Here, the Law Division's decision, although laudable in seeking to eliminate administrative delay, contravenes legislative policy and judicial precedent and, as we discuss in Point II, assumed primary jurisdiction in place of the Appellate Division as to FHA matters. Assumption by the courts of the agency's functions fosters the potential for mischief and the prospect of conflicting and contradictory results in the court system and in the administrative proceedings. Moreover, it would eventually lead to the court having to micromanage quotas and policies which the Legislature entrusted to COAH.[10]
Under the FHA, COAH has the mandatory duty to determine housing need and adopt criteria for municipalities to determine *895 their fair share, N.J.S.A. 52:27D-307, but it has discretion as to the timing of those regulations. Delay in implementing Mt. Laurel principles, or in actually producing affordable housing, is not necessarily unconstitutional. Hills Dev. Co., supra (103 N.J. at 41, 510 A.2d 621). This is not a case where it is patently clear that COAH violated any ministerial duty. Moreover, as noted, we defer to the interpretation of a statute by the agency charged with its administration. Clymer v. Summit Bancorp., 171 N.J. 57, 67, 792 A.2d 396 (2002).

II.
In addition to the exhaustion of administrative remedies argument, COAH and Springfield argue that the appropriate jurisdiction for this action is the Appellate Division. A party claiming to be adversely affected by alleged inaction of an administrative agency may seek leave to appeal directly to the Appellate Division. In re Failure by Dep't of Banking, 336 N.J.Super. 253, 261, 764 A.2d 494 (App.Div.2001); Hospital Center at Orange v. Guhl, 331 N.J.Super. 322, 330, 751 A.2d 1077 (App. Div.2000).
We agree with COAH and Springfield that the appropriate jurisdiction of an appeal from the FHA aspects of this matter lies with the Appellate Division. Pursuant to R. 2:2-3(a)(2) an appeal to the Appellate Division is of right:
(2) to review final decisions or actions of any state administrative agency or officer excepting matters prescribed by R. 8:2 (tax matters) and matters governed by R. 4:74-8 (Wage Collection Section appeals), except that review pursuant to this subparagraph shall not be maintainable so long as there is available a right of review before any administrative agency or officer, unless the interest of justice requires otherwise.
Moreover, R. 2:2-4 states that the Appellate Division may grant leave to appeal "from an interlocutory decision or action of a state administrative agency or officer if the final judgment, decision or action thereof is appealable as of right pursuant to R. 2:2-3(a)."
These rules were adopted pursuant to authority granted by the New Jersey Constitution of 1947 that provides for review of a state or local administrative agency action or inaction by the Superior Court without having to apply for a prerogative writ. Pascucci v. Vagott, 71 N.J. 40, 51-52, 362 A.2d 566 (1976). These grants were given as a result of "widespread dissatisfaction" with the fact that litigants were losing their claims due to the incorrect choices of writ through which to pursue their action. Central R.R. Co. of New Jersey v. Neeld, 26 N.J. 172, 184, 139 A.2d 110 (1958), cert. denied, 357 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1371 (1958). Thereafter, " `every administrative proceeding to review the action or inaction of a State administrative agency would be by appeal to the Appellate Division.' " Pascucci, supra, 71 N.J. at 52, 362 A.2d 566 (quoting Central R.R., supra, 26 N.J. at 185, 139 A.2d 110). Thus, the Appellate Division maintains exclusive jurisdiction to review state administrative actions. Ibid.
Public policy considerations reinforce this conclusion. We thus held that "there should be expeditious adjudication of all matters in controversy between the parties at one time and place." Id. at 53, 362 A.2d 566 (citing Ritepoint Co. v. Felt, 6 N.J.Super. 219, 70 A.2d 886 (App.Div.1950)). If there are factual disputes not supported by an adequate record we have authority to remand to the agency, an Administrative Law Judge or to the Law Division to develop a record. Guhl, supra (331 N.J.Super. at 329, 751 A.2d 1077).
*896 The phrase "court of competent jurisdiction" in N.J.S.A. 52:27D-319 refers to the Appellate Division because what is involved is an appeal from action or inaction of an administrative agency. See R. 2:2-3(a)(3). The legislative history of this act re-enforces this conclusion. Initially, the bill pertaining to this act was drafted without the language "the matter shall be transferred to the Office of Administrative Law as a contested case as defined in the Administrative Procedure Act" as now found in N.J.S.A. 52:27D-315c. Governor Thomas Kean submitted a conditional veto to the Senate proposing the adoption of "regular administrative procedures," rather than the special procedures initially proposed, thereby granting COAH the authority to make the ultimate decision, with appeals thereafter taken to the Appellate Division. This proposal was accepted by the Legislature and adopted as is evidenced by the language of Section 315c.
We agree with COAH's argument that sole jurisdiction over challenges to COAH's actions on the affordable housing aspects of this matter is in the Appellate Division.
Although some older cases note exceptions to the usual rule of exhaustion of remedies, there is no such exception applicable to COAH's duties under the FHA. Significantly, COAH's authority reaches boundaries far beyond a single locality. See Central R.R., supra (26 N.J. at 184-185, 139 A.2d 110). In addition, COAH's review procedures do not qualify as a ministerial duty exception. See Guhl, supra (331 N.J.Super. at 330 n. 2, 751 A.2d 1077). It has been vested with authority here over matters that are hardly ministerial acts. Furthermore, this case was voluntarily brought before COAH, rather than by transfer, thus the Law Division did not have original jurisdiction. See Fair Share Housing, supra (242 N.J.Super. at 81-82, 576 A.2d 24).
Lastly, the exception detailed in Alexander's Dept. Stores of New Jersey, Inc. v. Borough of Paramus, 243 N.J.Super. 157, 169, 578 A.2d 1241 (App.Div.1990), aff'd, 125 N.J. 100, 592 A.2d 1168 (1991), is not applicable here. Although Alexander's differed with Hills Dev. Co., supra (103 N.J. 1, 510 A.2d 621), on the jurisdictional protection provided to municipalities that have filed with COAH, other legal issues were involved in that case. Such issues included a prior settlement of litigation and an order requiring Paramus to rezone for Mt. Laurel housing. Significantly, Alexander's involved a commercial developer's challenge to the inclusion of its property as suitable for Mt. Laurel development at the intersection of two of the busiest highways in the State, Routes 4 and 17.[11] Numerous non-housing challenges preponderated in the litigation which did "not question Paramus's satisfaction of its Mt. Laurel duty" and many issues did not reopen until after COAH granted substantive certification and Paramus thereafter amended its ordinance. Id. at 165-166, 456 A.2d 390.
The objection here was not directed at the petition for substantive certification, rather it was to adoption of an ordinance. Additionally, plaintiffs' complaints sought not only to declare Springfield's ordinance null and void, but sought builder's remedies (a court-created remedy posing problems of administration), and the appointment of a special master to assist in the determining of appropriate zoning regulations and builder's remedies. In reality, the relief sought a preemptive strike premised on plaintiffs' claims of exclusionary zoning, which was predicated on plaintiffs' *897 desires to have Mt. Laurel zoning with a builder's remedy applied to their properties, rather than elsewhere.
Thus, the appropriate jurisdiction to appeal COAH's inaction is in the Appellate Division. Accord In re Failure of Commissioner, 358 N.J.Super. 135, 149-150, 817 A.2d 355 (App.Div.2003). See also Moss v. Shinn, 341 N.J.Super. 327, 338-339, 775 A.2d 243 (Law Div.2000), aff'd o.b., 341 N.J.Super. 77, 775 A.2d 85 (App. Div.2001).
We are satisfied that the Law Division Judge's ruling in this case conflicts with the mandates of the FHA and undermines the Council's function under that statute. The Council has primary jurisdiction to review Springfield's Mt. Laurel compliance efforts. N.J.S.A. 52:27D-304(a).
Reversed.
NOTES
[1] Southern Burlington County N.A.A.C.P. v. Township of Mount Laurel, 67 N.J. 151, 174, 336 A.2d 713 (Mt. Laurel I), cert. denied, 423 U.S. 808, 96 S.Ct. 18, 46 L. Ed.2d 28 (1975).
[2] L. 1985, c. 222, effective July 2, 1985. This statute was enacted subsequent to the decision in Southern Burlington County N.A.A.C.P. v. Township of Mount Laurel, 92 N.J. 158, 456 A.2d 390 (1983) (Mt. Laurel II).
[3] Action by COAH on that petition was effectively delayed for some 14 months under court order due to a lawsuit instituted by an objector, Danmik, Inc., who had filed out of time but received court approval to have an evidentiary hearing before the Council.
[4] Theoretically, if Sod Farm obtained zoning approval or met the zoning requirements it could build so-called "affordable housing" if it wished to do so, but without a "builder's remedy."
[5] On October 6, 2003, COAH proposed N.J.A.C. 5:94, which contained a third round methodology. See 35 N.J.R. 4636(a). An appeal in In re Failure of New Jersey Council on Affordable Housing to Adopt Third Round Fair Share Methodology and to Allocate Third Round Fair Share Obligations, A-5304-01, concerning claimed inaction by COAH seeking to compel release of COAH's third round methodology, was dismissed as moot on December 29, 2003.
[6] See supra note 2.
[7] The Legislature apparently recognized that there were reports of instances where this incentive has been abused and used as a threat to extract concessions from municipalities. See Mt. Laurel II, supra (92 N.J. at 280-281, 456 A.2d 390); Mount Olive Complex v. Township of Mount Olive, 356 N.J.Super. 500, 504-505, 813 A.2d 581 (App.Div.2003). See also Sam Stonefield, Symposium: Affordable Housing in Suburbia: The Importance but Limited Power and Effectiveness of the State Override Tool, 22 W. New Eng. L.Rev. 323, 336 (2001).
[8] N.J.S.A. 52:27D-309a states:

Within four months after the effective date of this act, each municipality which so elects shall, by a duly adopted resolution of participation, notify the council of its intent to submit to the council its fair share housing plan. Within five months after the council's adoption of its criteria and guidelines, the municipality shall prepare and file with the council a housing element, based on the council's criteria and guidelines, and any fair share housing ordinance introduced and given first reading and second reading in a hearing pursuant to R.S. 40:49-2 which implements the housing element.
[9] We recognize that in some situations waiver of the exhaustion of administrative remedies rule may be appropriate. See, e.g., Abbott v. Burke, 100 N.J. 269, 298, 495 A.2d 376 (1985); Roadway Express, Inc. v. Kingsley, 37 N.J. 136, 142, 179 A.2d 729 (1962); Naylor v. Harkins, 11 N.J. 435, 444, 94 A.2d 825 (1953); Nolan v. Fitzpatrick, 9 N.J. 477, 487, 89 A.2d 13 (1952); Ward v. Keenan, 3 N.J. 298, 308-309, 70 A.2d 77 (1949); and Baldwin Constr. Co. v. Essex Cty. Bd. of Taxation, 24 N.J.Super. 252, 274, 93 A.2d 800 (Law Div.1952), aff'd, 27 N.J.Super. 240, 99 A.2d 214 (App.Div. 1953).
[10] We have previously observed that courts are ill-equipped to micromanage an agency's activities when we stated:

We cannot micromanage any administrative agency. How an agency chooses to implement legislation is the agency's primary responsibility, not the court's. We give agencies wide discretion in deciding how best to approach legislatively assigned administrative tasks, Dougherty v. Dep't of Human Services, 91 N.J. 1, 6, 449 A.2d 1235 (1982); Texter v. Dep't of Human Services, 88 N.J. 376, 383, 443 A.2d 178 (1982), especially when the task falls within a particular agency's expertise, as does the task in question. See Public Interest Research Group v. State, 152 N.J.Super. 191, 203, 377 A.2d 915 (App.Div.), certif. denied, 75 N.J. 538, 384 A.2d 517 (1977).
[In re Failure by Dep't of Banking, 336 N.J.Super. 253, 262, 764 A.2d 494 (App.Div. 2001).]
[11] Although not in the reported opinion, we could take judicial notice as a fact of common knowledge, N.J.R.E. 201(b), that a large nationally known retail furniture store now graces that location, and not Mt. Laurel housing.